Debra SOUTHERS, et al., Appellants,

v.

CITY OF FARMINGTON, Missouri,
et al., Respondents.

No. SC 88612.

Supreme Court of Missouri,
En Banc.

June 10, 2008.

As Modified on Denial of Rehearing
Sept. 30, 2008.

Matthew J. Devoti, Thomas J. Casey, St. Louis, MO, for Appellants.

Mark H. Zoole, St. Louis, MO, for Respondents.

**MARY R. RUSSELL, Judge.**

Plaintiffs appeal after judgment was entered against them on their claims for their decedents' wrongful deaths and survivors' personal injuries resulting from a traffic collision with a speeding police vehicle.[1] Defendants in this case are the City of Farmington and three of its police officers.[2] This Court has jurisdiction pursuant to Missouri Constitution article V, section 10, as the case was taken on transfer after disposition by the court of appeals. This Court affirms in part and reverses in part. The case is remanded.

## A. Background

The Super 8 Motel in Farmington was robbed at gunpoint. The Farmington Police Department ("the Department") was alerted to the robbery and given a description of the suspect and the vehicle in which he fled. Police Officer Lindell Barton saw the suspect traveling south on Maple Valley Drive. He activated his lights and siren and pursued the suspect in a high-speed chase, reporting over the police radio that he was in pursuit.

Officers Ratliff and Lacey heard Barton's radio transmission, activated their vehicles' lights and sirens, and followed Barton's pursuit of the suspect. Officer Ratliff saw the suspect's vehicle, being followed by Officer Barton's vehicle, traveling south on Maple Valley Drive. In front of him, Officer Ratliff saw his field super-

---

1. Plaintiffs include Debra Southers (individually and as next friend of injured minors Rodney and Lakoda Clark), Terry Larson, and Kathleen Hammett. Southers is the mother of decedent Monica Clark and the daughter of decedent Janice Moutray. Rodney and Lakoda Clark are the minor children of decedent Monica Clark and were injured in the collision at issue. Larson and Hammett are also children of Janice Moutray. All plaintiffs are collectively referred to as "Plaintiffs" throughout this opinion.

2. Defendant police officers are: Police Officer Byron Ratliff, who was operating the vehicle that struck Plaintiffs' decedents' vehicle; Police Officer Larry Lacey, who was Officer Ratliff's field supervisor at the time of the collision; and Farmington's Chief of Police, Richard Baker. The City and defendant officers are collectively referred to as "Defendants" in this opinion.

visor, Officer Lacey, join the pursuit. Officer Ratliff continued to follow Officer Barton's pursuit as the third police vehicle following the suspect.[3] At the time, the Department's "vehicular pursuit policy" stated that police pursuits should normally be limited to no more than one primary vehicle and one backup vehicle, unless specifically instructed otherwise by a field supervisor.

Maple Valley Drive is a two-lane asphalt road with a speed limit of 35 miles per hour. Drivers traveling both north and south on Maple Valley Drive pulled to the side of the road after hearing the pursuing officers' emergency sirens. Among those drivers who had pulled over was Plaintiffs' decedent, Monica Clark, who was driving her grandmother and her two children. After the suspect and Officers Barton and Lacey passed, Clark pulled her vehicle from the roadside and into the southbound lane, where it was struck by Officer Ratliff's vehicle. Officer Ratliff was traveling at speeds between 67 and 71 miles per hour at the time of impact.

Clark and her grandmother died from injuries sustained in the collision. Her two children, ages 5 and 1 at the time, sustained serious personal injuries, but survived. Plaintiffs brought suit alleging negligence by Officers Ratliff and Lacey and by their police chief, Chief Baker. Plaintiffs also alleged that the City of Farmington was liable for the three officers' negligence via the doctrine of *respondeat superior*.

Defendants moved for summary judgment. They asserted that there was no negligent conduct and that the immunity protections of sovereign immunity, official immunity, and the public duty doctrine insulated them from liability. The trial court granted the motion and entered judgment. Plaintiffs' appeal follows.

## B. Standard of Review

Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 376–81.

## C. The Government Tort Immunity Doctrines

Before addressing whether summary judgment was properly entered in this case, however, this Court must consider the applicability of and interplay between the doctrines of sovereign immunity, official immunity, and the public duty doctrine. The applications of these doctrines have been muddied in Missouri case law, especially in cases involving police conduct. Consequently, trial courts have been left with murky precedent that offers as much confusion as it does guidance as to applica-

---

**3.** While it is clear that Officer Ratliff was the third officer in line behind the suspect's vehicle on Maple Valley Drive, it is not clear whether Officer Ratliff initiated his response to Officer Barton's radio transmission before Officer Lacey.

tion of these immunity doctrines. In light of recent decisions by this Court, shifting immunity trends in other jurisdictions, and evolving legislative enactments, a discussion of these doctrines may clarify Missouri's positions on these frequently-raised immunity defenses.

## I. Sovereign Immunity Under Missouri Law

The common law rule of sovereign immunity has been recognized by Missouri courts since 1821, and a modified form of sovereign immunity is now codified in Missouri's statutes at sections 537.600 to 537.650, RSMo 2000, and, where amended, RSMo Supp.2007.[4] Since 1978,[5] subsection 537.600.1 has outlined that Missouri public entities are not provided sovereign immunity for injuries (1) "directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment" and (2) resulting from the dangerous condition of public property. Section 537.600.2 clarifies that the section 537.600.1 waivers of immunity are "absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity" and regardless of whether the entity is covered by liability insurance for torts.

■■■ Full common law sovereign immunity belongs only to state entities. *Jungerman v. City of Raytown*, 925 S.W.2d 202, 204 (Mo. banc 1996). Missouri municipalities are not provided immunity for proprietary functions-those performed for the benefit or profit of the municipality as a corporate entity—but are immune for governmental functions-those performed for the common good. *Id.* Municipalities and other public entities, however, can waive their sovereign immunity for governmental functions to the extent that they are covered by liability insurance. Section 71.185 (pertaining to municipalities); section 537.610 (pertaining to "each political subdivision of this state").[6]

■■■ Because public entities act through their employees, actions against these entities to recover damages pursuant to the motor vehicle sovereign immunity waiver in section 537.600.1(1) must necessarily be brought under the doctrine of *respondeat superior*. *Davis–Bey v. Mo. Dept. of Corr.*, 944 S.W.2d 294, 298 n. 5 (Mo.App.1997). The legislature's waivers of immunity applicable to defendant municipalities and political subdivisions do not abrogate the immunity protections afforded to public employees. *See id.* at 298 n. 4.

4. Unless otherwise indicated, statutory references in this opinion are to RSMo 2000. Citations to section 537.600 are to RSMo Supp. 2007, unless otherwise indicated.

5. In 1977, this Court fully abolished common law sovereign immunity in Missouri. *Jones v. State Hwy. Comm'n*, 557 S.W.2d 225 (Mo. banc 1977) (superseded by statute, *see* sections 537.600 to 537.650). The dissent in *Jones* argued that sovereign immunity should be abolished by the legislature and not this Court. *Jones*, 557 S.W.2d at 231 (Donnelly, J., dissenting). The majority opinion abrogated sovereign immunity prospectively for

cases after August 15, 1978, in order to permit the General Assembly an opportunity to consider the doctrine. *Jones*, 557 S.W.2d at 231. In response, the General Assembly reestablished the doctrine in modified form under sections 537.600 to 537.650, RSMo 1978, now RSMo 2000, and, where amended, RSMo Supp.2007.

6. The waiver of sovereign immunity is only to the extent of the insurance coverage. *See* section 71.185.2; section 537.610.1 (immunity is waived "only to the maximum amount of and only for the purposes covered by" insurance).

Although sovereign immunity is a tort protection for government entities, not their employees, public employees are covered by two different government immunity doctrines: the official immunity and public duty doctrines. The official immunity and public duty doctrines have similar policies behind their protections and, in many cases, both doctrines can be applied to protect the defendant government employee. Because both doctrines are often applicable to a defendant public employee's conduct, they are often confusingly applied together in cases. These doctrines are addressed separately below to clarify their distinctions and similarities.

## II. Official Immunity

 As with the doctrine of sovereign immunity, Missouri has long-applied the doctrine of official immunity. *See, e.g., Reed v. Conway*, 20 Mo. 22 (1854).[7] This judicially-created doctrine protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity. *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo.

banc 1985), *overruled on other grounds by Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988).

 Whether an act can be characterized as discretionary depends on the degree of reason and judgment required. *Kanagawa*, 685 S.W.2d at 836. A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued. *Id.* A ministerial function, in contrast, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (internal citations omitted). The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. *Id.* Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption.[8] *Schooler v. Arring-*

---

**7.** *Reed* discusses the historical origins of the doctrine from British common law and its adoption in early American jurisprudence. The *Reed* court determined that public officers are immune from liability for discretionary decisions, so long as their motives were not tainted by fraud or malice.

**8.** This Court recognizes that other jurisdictions have found that public employees should not be immune from liability where they act with recklessness or gross negligence. *See, e.g., Morris v. Leaf*, 534 N.W.2d 388, 391 (Iowa 1995) (limiting officer's personal liability for consequences of high-speed police chase to "reckless rather than mere negligent

conduct" encourages "vigorous law enforcement without placing innocent bystanders at undue risk"); *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800, 803 (1981) (officer must not act with reckless disregard for safety of others); *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184, 186–89 (1991) (requiring motorist to prove gross negligence to recover from officer engaged in basic law enforcement function); *see also* 57 AM.JUR.2D *Municipal, County, School & State Tort Liability* section 439 (2001 & Cum.Supp.2007); *and cf. City of Lancaster v. Chambers*, 883 S.W.2d 650, 653–57 (Tx.1994) (illustrating that Texas's application of official immunity includes an inquiry into whether a public employee was

*ton*, 106 Mo.App. 607, 81 S.W. 468, 469 (1904).

■ Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties. *Davis*, 193 S.W.3d at 765. Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability. *Id.*

■ A finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act-because official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence. *Id.* at 765–66. Because the defense of official immunity is personal to a public employee, it cannot extend to protect his employing government entity sued under the doctrine of *respondeat superior*. *Id.* at 765. A government employer may still be liable for the actions of its employee even if the employee is entitled to official immunity because the doctrine protects the employee from liability, but it does not erase the existence of the underlying "tortious conduct" for which the government employer can be derivatively liable. *Id.* at 766.

*Davis* discusses that the application of official immunity only to the employee and not the employer is a conclusion consistent with the policy purposes of the doctrine of official immunity, which are intended to protect judgment decisions by public employees. *Id.* at 765. *Davis* also articulated that, in cases falling under the sovereign immunity waivers of section 537.600.1, "[i]t would be inconsistent with [the] statutory waiver of sovereign immunity" to apply the judicially-created doctrine of official immunity to shield the government employer from liability even if the employees are entitled to official immunity. *Id.* at 766 ("[The] doctrine of *respondeat superior* does not provide a shield to government employers where the statute provides that the government will be liable for the actions of its employees in all cases involving the operation of motor vehicles within the course of employment.").

### III. The Public Duty Doctrine

■ Whereas the concepts of sovereign immunity and official immunity have long been applied in Missouri, this Court did not embrace the public duty doctrine until 1970. *Jungerman*, 925 S.W.2d at 205 (stating that public duty was first adopted by Missouri in *Parker v. Sherman*, 456 S.W.2d 577, 579 (Mo.1970)). *But cf. Lowery v. Kansas City*, 337 Mo. 47, 85 S.W.2d 104, 111 (1935) (recognizing in dictum that a policeman was not liable for breach of a duty owed to public as a whole). The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. *Jungerman*, 925 S.W.2d at 205. This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public. *GWT–PAT, Inc. v. Mehlville Fire Prot. Dist.*, 801 S.W.2d 798, 800 (Mo.App.1991).

■ The public duty doctrine does not insulate a public employee from all

---

acting in "good faith" while performing a discretionary duty within the scope of his authority; defining good faith in a police pursuit case as "if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit"). Of course, Missouri does not recognize gross negligence. *See Fowler v. Park Corp.*, 673 S.W.2d 749, 755 (Mo. banc 1984) ("It ... remains the [common] law of Missouri that there are no legal degrees of negligence.").

liability, as he could still be found liable for breach of ministerial duties in which an injured party had a "special, direct, and distinctive interest." [9] *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 445 (Mo. banc 1986) (internal citations omitted). This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty. *Jungerman,* 925 S.W.2d at 205. Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions.[10] *Id.* Further, the protections of the public duty doctrine are not intended to be limitless, and, just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice or corruption,[11] the public duty doctrine will not apply where defendant public employees act "in bad faith or with malice." *See Jackson v. City of Wentzville,* 844 S.W.2d 585, 588 (Mo.App.1993) (considering whether the plaintiffs had sufficiently alleged that the defendant public employees "acted in bad faith or with malice" before assessing if the public duty doctrine would protect those employees).

■■■ The public duty doctrine is not an affirmative defense, but rather delineates the legal duty the defendant public employee owes the plaintiff. *Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987) (*abrogated on other grounds by Davis,* 193

S.W.3d at 766); *Green v. Mo. Dept. of Transp.,* 151 S.W.3d 877, 883 (Mo.App. 2004) (because public duty doctrine is not affirmative defense, the plaintiff bears burden of pleading facts in the petition that support existence of legal duty that establishes tort liability). The applicability of the public duty doctrine negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole. *Christine H. v. Derby Liquor Store,* 703 S.W.2d 87, 89 (Mo.App. 1985). In this way, the public duty doctrine's impact is distinguishable from the doctrine of official immunity. Application of the public duty doctrine leaves the plaintiff unable to prove all the elements of his claim for negligence, whereas application of the doctrine of official immunity merely impacts liability, but does not destroy the underlying tort.

■■■ Arguably, where there is no underlying tort, there can be no *respondeat superior* liability. Accordingly, this Court has previously held that "[t]he public duty doctrine shields employees from liability, but it also 'shields public officers, and the governmental bodies that employ them, from liability.'" *State ex rel. Howenstine v. Roper,* 155 S.W.3d 747, 755 (Mo. banc 2005) (quoting *Heins Implement Co. v. Mo. Highway & Transp. Comm'n,* 859 S.W.2d 681, 694 (Mo. banc 1993)). But,

---

9. Some states recognize a "special duty" exception to the public duty doctrine, which states that public officers owe a duty to an individual if: (1) the municipality is uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there are allegations of specific acts or omissions on the part of the municipality; (3) the acts or omissions are either affirmative or willful in nature; and (4) the injury occurs while the plaintiff is under the direct and immediate control of employees or agents of the municipality. *GWT–PAT,* 801 S.W.2d at 800 (internal citations omitted). Missouri has rejected adopting this "special duty" exception. *Id.*

10. It cannot be assumed that a duty is private under this exception simply because it is ministerial. *Jungerman,* 925 S.W.2d at 205.

11. *Schooler,* 81 S.W. at 469 (holding discretionary acts are unprotected by official immunity if the conduct is willfully wrong or done with malice or corruption).

extending the protections of the public duty doctrine to the government employer wrongly implies that there is no duty or breach of any kind. There is still an underlying wrong on which tort liability can be premised. For public policy reasons, courts have determined that a public employee should not face liability for a breach of a duty owed to the public. This reasoning, however, does not answer the question of whether there should be liability on the part of a government employer based on its employee's breach. The legislature has resolved this issue by waiving sovereign immunity for injuries arising out of the negligent operation of motor vehicles or for dangerous conditions of public property.

■ In deference to the statutory waiver of sovereign immunity provided by section 537.600.1, this Court is no longer willing to apply the judicially-created protections of the public duty doctrine in a way that would insulate government entities from tort liability where the legislature has expressly abolished such immunity.[12] *See Warren v. State*, 939 S.W.2d 950,

957–58 (Mo.App.1997) (finding that the public duty doctrine did not protect the State where the section 537.600.1(2) waiver of immunity applied); *see also Fox v. City of St. Louis*, 823 S.W.2d 22, 24–25 (Mo. App.1991) (suggesting that section 537.600 constitutes a separate waiver of immunity even in those situations in which the public duty rule might otherwise apply to deny a civil action for damages for negligence arising out of duties to the general public), *overruled on unrelated grounds by Hensley v. Jackson County*, 227 S.W.3d 491 (Mo. banc 2007). Application of the public duty doctrine should not expand the scope of a sovereign's immunity beyond that intended by statute, nor be contrary to the legislature's intent. *See Davis*, 193 S.W.3d at 766 (making application of official immunity consistent with legislative intent); *see also Adams v. State*, 555 P.2d 235, 241–42 (Alaska 1976) ("duty to all, duty to no-one rule" is a form of sovereign immunity that should not be amplified by court-created doctrine when the legislature has provided the state immunity).

Government employers cannot claim an extension of the protections of the public

---

**12.** A trend exists toward limiting application of the public duty doctrine, particularly where applying the doctrine to a government employer renders meaningless statutory efforts to limit governmental immunity. A number of states have abrogated or limited the public duty doctrine. *See, e.g., Busby v. Municipality of Anchorage*, 741 P.2d 230, 232 (Alaska 1987); *Leake v. Cain*, 720 P.2d 152, 158–59 (Colo.1986); *Commercial Carrier Corp. v. Indian River County*, 371 So.2d 1010, 1015 (Fla. 1979). Application of the public duty doctrine was also limited in these cases: *Wilson v. Nepstad*, 282 N.W.2d 664, 669–71 (Iowa 1979) (public duty doctrine not applicable where statutes plainly impose liability on municipality for torts committed by its employees while acting within the scope of their duties); *Stewart v. Schmieder*, 386 So.2d 1351, 1358 (La.1980) (mere fact that duty is of public nature and benefits general public

does not require conclusion that city cannot be liable); *Jean W. v. Commonwealth*, 414 Mass. 496, 610 N.E.2d 305, 307 (1993); *Beaudrie v. Henderson*, 465 Mich. 124, 631 N.W.2d 308, 313 (2001) (rejecting further expansion of public duty doctrine); *Doucette v. Town of Bristol*, 138 N.H. 205, 635 A.2d 1387, 1390 (1993); *Schear v. Brd. of County Comm'rs*, 101 N.M. 671, 687 P.2d 728, 730–32 (1984); *Brennen v. City of Eugene*, 285 Or. 401, 591 P.2d 719, 724–25 (1979); *Catone v. Medberry*, 555 A.2d 328 (R.I.1989); *Hudson v. Town of E. Montpelier*, 161 Vt. 168, 638 A.2d 561, 568 (1993); *Wood v. Milin*, 134 Wis.2d 279, 397 N.W.2d 479, 483 (1986); *Natrona County v. Blake*, 81 P.3d 948, 953–55 (Wyo. 2003).

North Dakota has never adopted the public duty doctrine. *Ficek v. Morken*, 685 N.W.2d 98, 107 (N.D.2004).

duty doctrine from their defendant employees in cases where the alleged negligence is a type covered by a waiver of immunity protections, such as the negligent operation of a motor vehicle.[13] Refusal to apply the public duty doctrine to a government employer in recognition of a statutory waiver of immunity does not threaten the policy concerns underlying the public duty doctrine, because the policy rationales underlying the doctrine are personal to public employees—to provide protection to modestly compensated civil servants against multifarious claims and to permit public servants to do their work without distracting concerns about liability.[14] As with *Davis*, this holding harmonizes legislative intent and judicially-created immunity doctrines.

### D. Statutory Compliance and Immunity Protections

In addition to the immunity provided to public employees under Missouri common law, the legislature has also adopted statutes that provide complete or qualified immunity in certain cases. These statutes provide statutory immunity that is distinct from common law immunity and raise the issue of whether these statutes alter the common law immunity protections available to public employees.

As to some statutes, this Court has previously held that the statutory language makes evident that the immunity protections are modified. For example, section 190.307 provides that emergency system operators should be protected by immunity *unless* they act "with willful or wanton

**13.** Unlike the decision in *Davis* regarding official immunity, this Court's holding as to the public duty doctrine does not make the doctrine's protections wholly personal to the defendant public employee. This holding balances the concept that a public employer should not face *respondeat superior* liability for a tort that is vanquished by the applicability of the public duty doctrine with the concept that the doctrine should not provide immunity protections where they have been waived by statute. Because this holding recognizes that the protections of the public duty doctrine should not always be extended to protect government employers, it limits the application of cases holding that the public duty doctrine applies equally to public employees and their employing entities. *See, e.g., Howenstine*, 155 S.W.3d at 755 (stating that the public duty doctrine shields employees and the governmental bodies that employ them from liability); *Jungerman*, 925 S.W.2d at 205 (citing *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 921 (Mo. banc 1992)) (stating the public duty doctrine applies equally to protect public officers in their individual capacities and the public entities for which they work); *Jackson v. City of Wentzville*, 844 S.W.2d at 589 (finding that city could have no *respondeat superior* liability where employee police officer was protected by public duty doctrine). Similarly, this Court's holding abrogates cases that suggest that the statutory waivers of immunity

have no impact on the applicability of the public duty doctrine. *See, e.g., Heins*, 859 S.W.2d at 695 (rejecting argument that statutory abrogation of sovereign immunity has effected a corresponding abrogation of the public duty doctrine); *Green v. Mo. Dept. of Transp.*, 151 S.W.3d at 881–83 (finding no impact on the application of the public duty doctrine from the section 537.600 waivers of immunity); *Claxton v. City of Rolla*, 900 S.W.2d 635, 636 (Mo.App.1995) (applying the public duty doctrine despite plaintiff's contention that city had waived immunity by purchase of liability insurance for tort claims); *Lawhon v. City of Smithville*, 715 S.W.2d 300, 302 (Mo.App.1986) (rejecting a claim that a city was not protected by public duty doctrine where it had insurance under section 71.185).

It should be noted that refusal to extend the public duty doctrine's protections to government employers does not render these entities unprotected-where there is no such immunity, there is no automatic liability and ordinary tort rules still adequately limit the scope of governmental liability.

**14.** *Green v. Denison*, 738 S.W.2d at 866 (equating policy underlying public duty doctrine to policy behind official immunity—effective administration of public affairs without threat of personal liability so the official can exercise best judgment in conducting the public's business).

misconduct or gross negligence." [15] This Court has held that section 190.307 was clearly intended to supersede common law official immunity and provide emergency system workers a qualified immunity that applies in all cases except those involving gross negligence. *State ex rel. Golden v. Crawford*, 165 S.W.3d 147, 149 (Mo. banc 2005). Similarly, section 331.100.5 provides that members of the Missouri Board of Chiropractic Examiners "shall not be personally liable either jointly or separate-

ly for any act or acts committed in the performance of their official duties as board members except gross negligence." This Court has held that section 331.100.5 provides qualified immunity that supplants common law quasi-judicial immunity. *Edwards v. Gerstein*, 237 S.W.3d 580, 582 (Mo. banc 2007).[16]

In *Davis*, this Court specifically addressed whether the language of the emergency vehicle statute, section 304.022, RSMo Supp.2007,[17] modified the immunity

**15.** Section 190.307 provides:

1. No public agency or public safety agency, nor any officer, agent or employee of any public agency, shall be liable for any civil damages as a result of any act or omission except willful and wanton misconduct or gross negligence, in connection with developing, adopting, operating or implementing any plan or system required by sections 190.300 to 190.340.

2. No person who gives emergency instructions through a system established pursuant to sections 190.300 to 190.340 to persons rendering services in an emergency at another location, nor any persons following such instructions in rendering such services, shall be liable for any civil damages as a result of issuing or following the instructions, unless issuing or following the instructions constitutes willful and wanton misconduct, or gross negligence.

**16.** *But see Edwards*, 237 S.W.3d at 587 (Stith, J., concurring in part and dissenting in part) (discussing that judicial immunity differs from other common law immunities because it is designed to protect the integrity of the judicial decision-making process and judicial immunity is different in kind and should not be affected by a statute supplanting other common law immunities).

**17.** All references to section 304.022 are to RSMo Supp.2007. Section 304.022 provides:

1. Upon the immediate approach of an emergency vehicle giving audible signal by siren or while having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle or a flashing blue light authorized by section 307.175, RSMo, the driver of

every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as far as possible to the right of, the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed, except when otherwise directed by a police or traffic officer.

2. Upon approaching a stationary emergency vehicle displaying lighted red or red and blue lights, the driver of every motor vehicle shall:

(1) Proceed with caution and yield the right-of-way, if possible with due regard to safety and traffic conditions, by making a lane change into a lane not adjacent to that of the stationary vehicle, if on a roadway having at least four lanes with not less than two lanes proceeding in the same direction as the approaching vehicle; or

(2) Proceed with due caution and reduce the speed of the vehicle, maintaining a safe speed for road conditions, if changing lanes would be unsafe or impossible.

3. The motorman of every streetcar shall immediately stop such car clear of any intersection and keep it in such position until the emergency vehicle has passed, except as otherwise directed by a police or traffic officer.

4. An "emergency vehicle" is a vehicle of any of the following types:

(1) A vehicle operated by the state highway patrol, the state water patrol, the Missouri capitol police, a conservation agent, or a state park ranger, those vehicles operated by enforcement personnel of the state highways and transportation commission, police or fire department, sheriff, constable or deputy sheriff, federal law enforcement officer authorized to carry firearms and to

protections available to a police officer involved in a pursuit-related collision. 193 S.W.3d at 763–64. *Davis* held that the language of section 304.022 did not show a legislative intent to supplant common law official immunity. *Id.* at 764 (holding that the requirements of section 304.022 did not

"abolish, abrogate, or in any way modify official immunity").[18] *Davis* found that "[s]ection 304.022, by its terms, does not provide official immunity" and overruled past cases that required section 304.022 compliance as a prerequisite to application of official immunity.[19] *Id.* at 764 & n. 3.

make arrests for violations of the laws of the United States, traffic officer or coroner or by a privately owned emergency vehicle company;

(2) A vehicle operated as an ambulance or operated commercially for the purpose of transporting emergency medical supplies or organs;

(3) Any vehicle qualifying as an emergency vehicle pursuant to section 307.175, RSMo;

(4) Any wrecker, or tow truck or a vehicle owned and operated by a public utility or public service corporation while performing emergency service;

(5) Any vehicle transporting equipment designed to extricate human beings from the wreckage of a motor vehicle;

(6) Any vehicle designated to perform emergency functions for a civil defense or emergency management agency established pursuant to the provisions of chapter 44, RSMo;

(7) Any vehicle operated by an authorized employee of the department of corrections who, as part of the employee's official duties, is responding to a riot, disturbance, hostage incident, escape or other critical situation where there is the threat of serious physical injury or death, responding to mutual aid call from another criminal justice agency, or in accompanying an ambulance which is transporting an offender to a medical facility;

(8) Any vehicle designated to perform hazardous substance emergency functions established pursuant to the provisions of sections 260.500 to 260.550, RSMo.

5. (1) The driver of any vehicle referred to in subsection 4 of this section shall not sound the siren thereon or have the front red lights or blue lights on except when such vehicle is responding to an emergency call or when in pursuit of an actual or suspected law violator, or when responding to, but not upon returning from, a fire.

(2) The driver of an emergency vehicle may:

(a) Park or stand irrespective of the provisions of sections 304.014 to 304.025;

(b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c) Exceed the prima facie speed limit so long as the driver does not endanger life or property;

(d) Disregard regulations governing direction of movement or turning in specified directions.

(3) The exemptions granted to an emergency vehicle pursuant to subdivision (2) of this subsection shall apply only when the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle.

6. No person shall purchase an emergency light as described in this section without furnishing the seller of such light an affidavit stating that the light will be used exclusively for emergency vehicle purposes

7. Violation of this section shall be deemed a class A misdemeanor.

18. *Davis* concluded that the defendant police officer was entitled to the protections of common law official immunity because the requirements of section 304.022 did not alter the common law doctrine. 193 S.W.3d at 764. It discussed official immunity's relief of liability for acts done in a discretionary capacity and noted that, in some circumstances, an officer might properly exercise his discretion by *not* complying with the statutory requirements of section 304.022. *Id.* (finding an officer can be entitled to official immunity even if he fails to activate emergency lights and sirens as required by section 304.022, because a particular emergency might justify a less conspicuous, or even a silent, approach).

19. Before *Davis*, Missouri courts had ruled that public employees should be denied com-

█ Plaintiffs' allegations in this case include that Officer Ratliff is not entitled to immunity because his conduct was contrary to section 304.022. *Davis*, however, makes clear that that failure to comply with the requirements of section 304.022 is not a bar to immunity protections.[20]

Plaintiffs further argue that the defendant officers should be denied immunity protections because they failed to follow local departmental policies. Nothing in the departmental policies at issue, however, supplants the common law immunity protections available to the defendant officers and, as such, their potential immunity is unaffected by the allegations of policy violations.

Public employees' conduct that is contrary to applicable statutes or policies can constitute evidence that their conduct was negligent, but that conduct does not remove their negligence from the protections of the official immunity or public duty doctrines where the provisions at issue indicate no intent to modify or supersede these common law immunity protections.

### E. Analyzing Liability In This Case

Having laid out the standards applicable to the different types of immunities ap-

---

mon law immunity for negligent acts or omissions committed in violation of a statute, regulation, or common law rule. *See, e.g., Pace v. Pac. Fire Prot. Dist.*, 945 S.W.2d 7, 10 (Mo.App.1997) (discussing public duty and official immunity doctrines collectively for the proposition that an officer is not "under the protective umbrella" of a statute unless he complies with its mandates before exercising his judgment), *overruled by Davis*, 193 S.W.3d at 764; *Green v. Mo. Dept. of Transp.*, 151 S.W.3d at 883 (finding the public duty doctrine does not provide a public employee protection when he fails to comply with an applicable statute, regulation, or common law rule; and discussing that typically the limitation on the public duty doctrine requiring statutory compliance is applied in cases involving a public officer's "fail[ure] to comply with 'rules of the road' in operation of vehicles; fail[ure] to obey traffic rules and regulations; or, fail[ure] to abide by other police power measures"). Particularly, courts had interpreted section 304.022 to supplant common law immunity protections and, as such, denied public employees immunity for negligent acts committed in the kind of emergency situations covered by that statute if they failed to comply with its terms. *See, e.g., McGuckin v. City of St. Louis*, 910 S.W.2d 842, 845 (Mo. App.1995) (official immunity would not apply if officer violated emergency vehicle statute by not operating lights and siren before disregarding traffic rules that bind all drivers), *overruled by Davis*, 193 S.W.3d at 763–64.

20. Plaintiffs' claims also include that Officer Ratliff acted contrary to the provisions of (1) section 300.100.2(3), RSMo Supp.2007, when he "endangered life or property while exceeding the maximum speed limit while in pursuit" and (2) section 300.100.4, RSMo Supp. 2007, when he "acted with reckless disregard for the safety of others" while operating an emergency vehicle. Section 300.100, RSMo Supp.2007, is a model traffic ordinance outlining rules and privileges for drivers of emergency vehicles. Section 300.100.4, RSMo Supp.2007, provides that nothing in the statute shall "*relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.*" (emphasis added). It could be argued that this language suggests that emergency drivers should not be protected if they act with reckless disregard for the safety of others. But, as a model traffic ordinance, section 300.100, RSMo Supp.2007, is not automatically applicable law and must be adopted by a city in its ordinances in order to apply to emergency vehicle drivers in that city. Section 300.600. Plaintiffs failed to include in the record that section 300.100, RSMo Supp.2007, has been adopted by the City in its ordinances, and they have failed to advance an argument that its provisions are applicable to Officer Ratliff. This Court does not take judicial notice of city ordinances. *Consumer Contact Co. v. State*, 592 S.W.2d 782, 785 (Mo. banc 1980). As such, this case does not present an opportunity to address section 300.100.4's impact on common law immunity.

plied by the court in granting summary judgment in this case, this Court considers the Plaintiffs' assertions that the trial court erred.

## I. The Trial Court's Findings

The trial court granted summary judgment to defendants after finding that the "parties' voluminous submissions" presented "no evidence of any negligence by any individual Defendant that caused this accident." It also determined that the defendant officers' acts were duties owed to the general public such that they were protected by the public duty doctrine. The trial court further found that official immunity also protected all the officer defendants. It then concluded there could be no *respondeat superior* liability against the City because there was no underlying cause of action for negligence against the defendant officers. Having so found, the trial court declined to rule on the City's arguments that it was entitled to sovereign immunity.

## II. Arguments on Appeal

Plaintiffs contend that the officer defendants are not entitled to the protections of official immunity or the public duty doctrine, and they assert that the City is not entitled to sovereign immunity protections nor is it immune from *respondeat superior* liability. Plaintiffs also maintain that they presented genuine issues of material fact about Defendants' negligent conduct that survive summary judgment.

## III. Officer Ratliff's Liability

Plaintiffs' claims against Officer Ratliff asserted that he acted negligently by: (1) operating his police car "at a rate of speed that was high, excessive, and dangerous under the circumstances and conditions then and there existing," (2) failing to keep a careful lookout for other vehicles; and (3) failing to stop or slow his vehicle or

sound warning of his approach when "exercise of the highest degree of care" so required in order to avoid the collision. Plaintiffs argue Officer Ratliffs' conduct was contrary to sections 300.100.2(3) and 300.100.4, section 304.022, and departmental policies.

Defendants maintain that summary judgment was appropriately granted on the claims against Officer Ratliff because there is no evidence he was negligent, and further because he is protected by the official immunity and public duty doctrines. Defendants argue that Plaintiffs' contentions that Officer Ratliff was negligent in the course of a police pursuit are meaningless because Plaintiffs previously conceded that Officer Ratliff was not involved in a pursuit at the time of the collision, but rather was responding to an officer-in-need-of-aid call.

Defendants' non-pursuit arguments are disingenuous. The record reveals repeated allegations by Plaintiffs describing Officer Ratliff as being involved in an emergency pursuit. Indeed, Officer Ratliff's own deposition describes him as being in pursuit of the fleeing suspect before the collision. The trial court's summary judgment order describes Officer Ratliff as "driving in response to an emergency call of the highest priority, and specifically an officer in need of aid" at the time of the collision. Despite the disagreement about this fact, however, there is no question that Officer Ratliff was operating a motor vehicle in response to a police emergency at the time of this accident.

## IV. Officer Ratliff and Immunity Protections

The official immunity doctrine does not apply to police officers responding to non-emergencies, but it does apply if the officers are responding to an emergency. *Davis*, 193 S.W.3d at 763 (citing

*Brown v. Tate*, 888 S.W.2d 413, 415 (Mo. App.1994)). Officer Ratliff's conduct was in the course of his official duties and involved the kind of discretionary decisions that require professional expertise and judgment that the official immunity doctrine is intended to protect. *See Brown*, 888 S.W.2d at 415; *Fonseca v. Collins*, 884 S.W.2d 63, 67 (Mo.App.1994). As such, he is shielded from liability in this case by official immunity unless an exception to application of the doctrine applies.

No Missouri case specifically outlines whether the public duty doctrine applies to emergency operation of a motor vehicle like Officer Ratliff's conduct in this case.[21] To determine whether the public duty doctrine applies to Officer Ratliff's conduct, this Court examines whether his actions involved a duty to the public generally, instead of to a specific individual. *See Jungerman*, 925 S.W.2d at 205.

▮▮▮▮▮ That Officer Ratliff was acting within the scope of his job as a police officer at the time of the collision [22] is not enough to determine that his actions involved a public duty. *Davis–Bey*, 944 S.W.2d at 298. Although the public duty doctrine cannot insulate Officer Ratliff from liability where a "duty is owed to particular individuals for the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest," this ministerial duty-based exception does not apply in the discretion-laden emergency situation in which Officer Ratliff was involved.[23] *Jungerman*, 925

21. Comparatively, the duty to operate a motor vehicle safely in a *non*-emergency situation has been determined to be a duty owed to the injured individual, not the public as a whole, such that the public duty doctrine will not apply to *non*-emergency police operation of a motor vehicle. *Davis–Bey*, 944 S.W.2d at 297–98 (noting that public duty doctrine does not shield public employee driver in non-emergency situation from liability where the duty was to "all who might be injured by his negligent operation of the vehicle, not just the public at large"); *Brown*, 888 S.W.2d at 416 (finding that police officer operating a motor vehicle in the course of his duties is under a common duty, as are all drivers, to obey traffic rules and regulations and to exercise the highest degree of care on the roads).

22. The City's arguments that it should not have *respondeat superior* liability for Officer Ratliff's conduct include assertions that his conduct at the time of the collision was outside the scope of his employment. The City contends that Plaintiffs cannot allege that Officer Ratliff's conduct was beyond ordinary negligence and, yet, not be beyond the scope of his employment. They argue that his alleged failures to follow applicable statutes and policies remove his conduct from the range of conduct authorized by the City. These arguments, however, are not persuasive. It is clear that "[w]hether an employee is engaged in the scope and course of his employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or 'interests' of the employer." *Noah v. Ziehl*, 759 S.W.2d 905, 910 (Mo.App. 1988). An employee acts in the course of his employment when he is engaged in doing for his employer an act consciously and specifically directed, or any act reasonably deemed an ordinary and natural incident or attribute of that act, or a natural, direct and logical result of it. *Id.* (internal citations omitted). An act that is fairly and naturally incident to the employer's business is not removed from the employer's business because it is mistakenly or ill-advisedly done, unless it arises from a wholly external, independent or personal motive. *Id.* There are no allegations in this case that Officer Ratliff's actions arose from a "wholly external, independent or personal motive" that removed them from the scope of his employment.

23. As discussed above, Missouri does not recognize the general "special duty" exception to application of the public duty doctrine applied in other states. *See* note 8. Other states, however, have found a "special duty" exception to application of the public duty doctrine where, as under Missouri law, an officer's emergency driving conduct is restricted by statutes permitting emergency violations of the rules of the road balanced against consid-

S.W.2d at 205 (internal citations and quotations omitted). This Court finds that Officer Ratliff's police pursuit conduct arose from his duties owed to the public generally, and is eligible for the protections of the public duty doctrine, unless Plaintiffs pleaded an applicable exception to applying the doctrine.

As outlined above, Plaintiffs' allegations that Officer Ratliff failed to comply with applicable departmental policies or the provisions of section 304.022 do not except his conduct from immunity protections, even if this failure is relevant to proof of negligence.[24]

Officer Ratliff's conduct is protected by official immunity and the public duty doctrine, and Plaintiffs pleaded no applicable exceptions to applying these immunity protections. The trial court did not err in granting summary judgment in his favor.

## V. The City's Liability for Officer Ratliff's Conduct

■■■■ Officer Ratliff's alleged negligence falls under the statutory waiver of sovereign immunity in section 537.600.1(1) because it alleges injuries directly resulting from negligent acts by a public employee arising out of his operation of a motor vehicle within the course of his employment. As such, the City is not protected by sovereign immunity against the claims relating to Officer Ratliff's alleged negligence.

Further, as explained above, there can be no immunity protections for the City where statutes provide its immunity protections are waived. Under *Davis*, the official immunity protections available to Officer Ratliff are personal to him and cannot be extended to protect the City. 193

---

eration that the violations should not endanger life or property. *See, e.g., Eklund v. Trost,* 335 Mont. 112, 151 P.3d 870, 879–80 (2006) ("Evident from the statute is that while police officers ... may have authority to ignore certain laws of the road under limited circumstances, they nevertheless have a duty to drive safely under the circumstances .... and emergency vehicles are not relieved from liability for driving in reckless disregard for the safety of others."). *Eklund* found a particular duty existed between the operator of the emergency vehicle and the person injured in an emergency pursuit because the emergency vehicle statutes suggested a special class of persons of "potential victims of a high speed chase" to whom a duty was owed. *Id.* at 880. It concluded that the emergency vehicle statutes applicable in that case could "create special relationships between government officers and persons sufficient to render the public duty doctrine inapplicable." *Id.* Eklund acknowledged that the duty of care owed by the police officer needed to be foreseeable before the public duty doctrine was defeated, but found that the foreseeability requirement was satisfied under the circumstances of the case because the applicable emergency vehicle statutes and departmental policies were "aimed at curbing just the sort of accident

which occurred here-both embody a premise that unsafe police pursuits can and will lead to bystander injury." *Id.* at 880–81.

Missouri courts recognize a duty owed to an individual that escapes the protections of the public duty doctrine where a plaintiff suffers injuries arising from circumstances peculiar to him as an individual, not merely as part of a certain "class" of individuals who are foreseeable plaintiffs. *Cox v. Dep't of Natural Res.,* 699 S.W.2d 443, 449 (Mo.App.1985) (noting a distinction between cases wherein a plaintiff pleads a personal duty owed particularly to him and cases wherein the duty was owed to the general public and, therefore, protected from private civil liability). In this case, Plaintiffs cannot show that a duty interest exists that includes reasonably foreseeable injury to particular, identifiable individuals such that the public duty doctrine should not apply. *Cf. Jungerman,* 925 S.W.2d at 205.

24. Even where Plaintiffs' allegations that Officer Ratliff violated applicable statutes and policies have no impact on the availability of immunity protections for him, they are an important component in Plaintiffs' ability to show that his conduct was negligent, and, thereby, establish a basis for *respondeat superior* liability for the City.

S.W.3d at 765. And, because the legislature intended the City to face liability in negligent operation of motor vehicle cases, the City cannot claim the residual protections of the public duty doctrine, despite the fact that Officer Ratliff is protected by the doctrine.

To the extent that the trial court entered judgment after determining the City was immune from all liability in this case, that judgment is reversed. Section 537.600.1(1) makes clear that the City is not immune from the claims of *respondeat superior* liability relating to Officer Ratliff's conduct.

## VI. Officer Lacey's and Chief Baker's Liability

■ Plaintiffs' claims against Officer Lacey allege that he provided negligent supervision that led to their decedents' injuries. They allege he failed to perform his supervisory duties pursuant to the City's vehicular pursuit policy-including failing to terminate the pursuit when the risks outweighed the benefits, failing to assign primary and backup pursuit vehicles, and failing to order Officer Ratliff to end his pursuit. Plaintiffs maintain that Chief Baker was negligent in failing to properly implement vehicular pursuit policies for the City and in failing to properly train the City's officers in pursuit procedures.

The doctrine of official immunity applies to the alleged negligence of Officer Lacey and Chief Baker. Their conduct at issue involves highly discretionary supervisory and policy decisions that the doctrine is intended to shield. *See State ex rel. St. Louis State Hosp. v. Dowd,* 908 S.W.2d 738, 741 (Mo.App.1995) (finding supervisory conduct was discretionary and covered by official immunity), *overruled on other grounds by Cain v. Mo. Highways and*

*Transp. Comm'n,* 239 S.W.3d 590 (Mo. banc 2007); *Jackson v. Wilson,* 581 S.W.2d 39, 44 (Mo.App.1979) (finding that policy decisions for a public swimming area were protected by official immunity).

The public duty doctrine also applies to the allegations against Officer Lacey and Chief Baker. Officer Lacey's conduct falls under the protections of the public duty doctrine because a supervising police officer's duty to supervise officers in his command is a duty owed to the general public. Likewise, the public duty doctrine applies to the allegations against Chief Baker because his duties to create and implement police procedures and policies and to train police officers are duties owed to the general public that are intended to be protected from second-guessing by immunity protections. *See State ex rel. Barthelette v. Sanders,* 756 S.W.2d 536, 538 (Mo. banc 1988) (finding that a duty to establish park safety measures was a duty owed to the general public).

As discussed above, Plaintiffs' allegations that Officer Lacey's and Chief Baker's conduct violated departmental policies do not exempt them from the protections of official immunity or the public duty doctrine.

The trial court's judgment that Officer Lacey and Chief Baker are immune from liability is affirmed.

## VII. The City's Liability for Officer Lacey's and Chief Baker's Conduct

■ Because the allegations relating to Officer Lacey and Chief Baker pertain to governmental functions, the City has sovereign immunity as a defense for these claims unless a waiver of immunity applies. Unlike Officer Ratliff's conduct,

Officer Lacey's and Chief Baker's conduct does not fall under the statutory waiver of sovereign immunity in section 537.600.1(1).[25] But, the inquiry about whether the City is entitled to sovereign immunity from the allegations of *respondeat superior* liability stemming from these officers' conduct does not rest only upon consideration of section 537.600.1(1). Plaintiffs also argue that the City waived sovereign immunity for these claims by purchasing applicable liability insurance, but discovery as to the City's insurance coverage was not completed before summary judgment was entered against Plaintiffs.

Without knowing more, this Court is unable determine if the City has insurance coverage that waives its immunity for the non-motor vehicle operations claims relating to Officer Lacey and Chief Baker. If the statutory waiver of immunity applies because of the City's insurance coverage, the City cannot escape liability simply because the defendant officers are immune. The public duty doctrine cannot be extended to provide the City protections from liability where there is a statutory waiver of immunity. And, regardless of whether a statutory waiver applies, the City cannot claim the protections of the officers' official immunity because the protections of that doctrine are personal to the officers. *Davis*, 193 S.W.3d at 765.

The trial court's judgment that the City is fully immune from *respondeat superior* liability for Officer Lacey's and Chief Baker's conduct is reversed. On remand the court can consider if any statutory waiver of the City's sovereign immunity applies. If a waiver does apply, it will prevent the City from claiming derivative protections from the public duty doctrine for these claims.

## F. Conclusion

In summary, this Court finds that the defendant officers were entitled to summary judgment because they are protected by official immunity and the public duty doctrine. The City, however, was not entitled to summary judgment on Plaintiffs' claims relating to Officer Ratliff's conduct, because his alleged negligence falls under the statutory waiver of immunity provided by section 537.600.1(1). Further, summary judgment was not properly entered for the City on Plaintiffs' claims relating to Officer Lacey's and Chief Baker's conduct because the court is required to consider whether a statutory waiver of immunity applies to their conduct, such that the City cannot claim that these officers' immunity under the public duty doctrine extends to protect the City.

The trial court's judgment is affirmed in part and reversed in part. The cause is

---

**25.** Plaintiffs urge this Court to find that Officer Lacey's and Chief Baker's conduct in this case was akin to "operation of a motor vehicle" because they were charged with "controlling the manner" of Officer Ratliff's emergency driving. As such, they argue that the City is not entitled to immunity protections because all of the allegedly negligent conduct in this case falls under the statutory waiver of immunity in section 537.600.1(1). This argument is unpersuasive. The statutory waiver of sovereign immunity in section 537.600.1(1) that covers "operation of a motor vehicle" does not include actions alleging negligence in training or enacting policies that pertain to operation of motor vehicles, and this Court will not extend "operation of a motor vehicle" to cover directions given to those operating vehicles. *See Oberkramer v. City of Ellisville,* 650 S.W.2d 286, 296–97 (Mo.App.1983) (finding acts or omissions of supervisory personnel not present in vehicle was not operation of the vehicle); *Plummer v. Dace,* 818 S.W.2d 317, 319 (Mo.App.1991) (finding operation of motor vehicle does not include training bus drivers or designating bus stops).

remanded.[26]

STITH, C.J., PRICE, TEITELMAN, WOLFF and BRECKENRIDGE, concur.

**26.** Plaintiffs contend they have an absolute right to change of venue under section 508.140.1 because they could not receive a fair trial in St. Francois County due to bias and prejudice in favor of Defendants. The trial court properly followed the guidelines of Rule 51.04 in determining that Plaintiffs had failed to show sufficient evidence of prejudice to warrant a change of venue.