SUPREME COURT OF MISSOURI
 en banc

STATE ex rel. ) Opinion issued June 15, 2021
OFFICER SERGEANT DIRK HELMS )
and CHIEF JOE EDWARDS, )
 )
 Relators, )
 )
v. ) No. SC98711
 )
THE HONORABLE JOSEPH ALFRED )
RATHERT, )
 )
 Respondent. )

 ORIGINAL PROCEEDING IN MANDAMUS

 Lonnie Decker (“Mr. Decker”) filed a petition for wrongful death against Sergeant

Dirk Helms (“Sergeant Helms”) and Chief Joe Edwards (“Chief Edwards”) of the

De Soto Police Department and several other defendants following the death of

Mr. Decker’s daughter, Lillian Flath (“Ms. Flath”). Ms. Flath was a passenger in a

vehicle who died during an automobile accident in the course of a police pursuit by

separate defendant Officer David Krassinger (“Officer Krassinger”). Sergeant Helms and

Chief Edwards each filed separate motions to dismiss the claims against them alleging

such claims were barred by official immunity and the public duty doctrine. The circuit

court overruled both motions. Sergeant Helms and Chief Edwards now seek a writ of

prohibition from this Court ordering the circuit court to take no action other than to
dismiss Sergeant Helms and Chief Edwards from the lawsuit. This Court has the

authority to “issue and determine original remedial writs.” Mo. Const. art. V, § 4.1. For

the reasons set forth below, this Court’s preliminary writ of prohibition is now made

permanent.

 Background

 On May 22, 2018, at around 11:52 p.m., Officer Krassinger noticed a vehicle had

parked and turned off its headlights in Woodlawn Cemetery, located in the City of

De Soto, Jefferson County, Missouri. Based on the license plate number and details of

the vehicle, Officer Krassinger identified the vehicle as an Oldsmobile owned by

Mr. Decker. Officer Krassinger approached the vehicle and activated his spotlight and

takedown lights, at which point the driver of the Oldsmobile, Anthony Santiago

(“Mr. Santiago”), put the car in gear and pulled away. Ms. Flath was a passenger in the

Oldsmobile.

 Officer Krassinger pursued the Oldsmobile turning out of Woodlawn Cemetery

traveling eastbound on Vineland School Road. Mr. Santiago, with Officer Krassinger in

pursuit, passed through and ignored various traffic signals, including stop signs. At

approximately 11:55 p.m., Mr. Santiago drove the Oldsmobile through an intersection

and was struck by a Chevrolet truck. Ms. Flath was pronounced dead at the scene of the

accident as a result of blunt force trauma.

 Mr. Decker, Ms. Flath’s father, filed suit against several defendants, including

Sergeant Helms and Chief Edwards. Mr. Decker alleged Sergeant Helms and Chief

Edwards were both supervisors of Officer Krassinger and each failed to adopt vehicle

 2
pursuit policies or train their police officers (including Officer Krassinger) regarding

proper vehicle pursuit procedures under those policies. 1 Mr. Decker also alleged

1
 A review of Mr. Decker’s petition reveals he alleges the following:

 79. At all times relevant herein, the De[]Soto Police Department lacked polic[i]es,
 guidelines, general orders, operations, training or instructions on law enforcement
 driving and police pursuits.
 80. Upon information and belief, the De[]Soto Police Department policies,
 procedures, customs and practices regarding police pursuits were inadequate,
 improper, and not sufficient to prevent the unjustified death of [Ms. Flath].
 81. Defendant Officer Krassinger, Defendant Officer Schuler, and Defendant
 Sergeant Helms lacked knowledge of any policies that existed and were not
 properly trained in law enforcement driving and police pursuits.
 82. Defendant Chief Edwards failed to train subordinate police officers on law
 enforcement driving, police pursuits, and any polic[i]es that existed in the
 department.
 …

 98. That notwithstanding the aforesaid duties, [Sergeant Helms] breached his duty
 and was thereby negligent in one or more of the following respects:
 a. Failed to properly train De[]Soto Police Officers on policy governing initiation,
 continuation and termination of vehicle pursuits;
 b. Failed to properly train De[]Soto Police Officers on Missouri POST Standards
 for pursuits;
 c. Failed to properly train Missouri statutory guidelines for police pursuits;
 d. Failed to implement general police policies and procedures for the De[]Soto
 Police Department;
 e. Failed to terminate the pursuit of the Oldsmobile vehicle[.]
 …

 104. That notwithstanding the aforesaid duties, [Chief Edwards] breached his duty, and
 was thereby negligent, in one or more of the following respects:
 a. Failed to properly train De[]Soto Police Officers on policy governing initiation,
 continuation and termination of vehicle pursuits;
 b. Failed to properly train De[]Soto Police Officers on Missouri POST Standards
 for pursuits;
 c. Failed to properly train Missouri statutory guidelines for police pursuits;
 d. Failed to implement general police policies and procedures for the De[]Soto
 Police Department;

 3
Sergeant Helms and Chief Edwards failed to use due regard for the safety of those not

involved in the pursuit, failed to avoid creating a dangerous condition on a public

roadway, and failed to avoid causing injury to Ms. Flath.

 Sergeant Helms and Chief Edwards filed motions to dismiss, each arguing that

Mr. Decker’s claims were barred by official immunity and the public duty doctrine.

Mr. Decker responded, arguing that exceptions to the official immunity and public duty

doctrines applied because (1) the actions Sergeant Helms and Chief Edwards failed to

take were ministerial in nature and (2) Sergeant Helms and Chief Edwards owed a special

duty to Mr. Decker’s daughter rather than a general public duty. The circuit court

overruled both motions. Sergeant Helms and Chief Edwards now seek a writ of

prohibition with this Court compelling the circuit court to sustain their motions and

dismiss the claims against them.

 Analysis

 “Prohibition is a discretionary writ that only issues to prevent an abuse of judicial

discretion, to avoid irreparable harm to a party, or to prevent exercise of

extrajurisdictional power.” State ex rel. Schwarz Pharma, Inc. v. Dowd, 432 S.W.3d 764,

768 (Mo. banc 2014) (citation omitted). This Court has utilized the remedy of

prohibition when an individual was entitled to dismissal either due to official immunity

 e. Failed to terminate the pursuit of the Oldsmobile vehicle[.]
[Emphasis added.] Although Mr. Decker could have been more explicit in alleging Sergeant
Helms and Chief Edwards were the parties responsible for failing to implement vehicular pursuit
policies, this Court’s review assumes the facts contained in the petition are true and construes the
facts alleged in the petition in Mr. Decker’s favor. See Ward v. W. Cnty. Motor Co., 403 S.W.3d
82, 84 (Mo. banc 2013).
 4
or the public duty doctrine. State ex rel. Barthelette v. Sanders, 756 S.W.2d 536, 539

(Mo. banc 1988). Importantly, immunity protects an official from suit altogether, not

merely judgment. State ex rel. Alsup v. Kanatzar, 588 S.W.3d 187, 190 (Mo. banc 2019).

 Official immunity “protects public officials sued in their individual capacities

from liability for alleged acts of negligence committed during the course of their official

duties for the performance of discretionary acts.” Id. (quotation marks omitted). There is

“a narrow exception to the application of the official immunity doctrine – i.e., when a

public officer fails to perform a ministerial duty required of him by law, he may be

personally liable for the damages caused.” Id. at 191.

 A ministerial duty “is one in which a certain act is to be performed upon a given

state of facts in a prescribed manner in obedience to the mandate of legal authority, and

without regard to [the public official’s] judgment or opinion concerning the propriety or

impropriety of the act to be performed.” Id. (alteration in original) (quotation marks

omitted). The central question in determining whether an act is ministerial “is whether

there is any room whatsoever for variation in when and how a particular task can be

done.” Id. “If so, that task – by definition – is not ministerial.” Id. “The fact that a

statute or regulation may confer authority – or even a duty – to act in a given situation

says nothing about whether the act authorized or compelled is the sort of ministerial or

clerical act to which official immunity does not extend.” Id. at 192. “[E]ven when a

clerical or ministerial act appears to be authorized or required by statute, official

immunity will still apply if the official retains authority to decide when and how that act

is to be done.” Id. at 192-93.

 5
 Sergeant Helms and Chief Edwards argue Mr. Decker’s allegations are similar to

the plaintiffs’ allegations in Southers v. City of Farmington, 263 S.W.3d 603 (Mo. banc

2008), where this Court held official immunity barred suit. Sergeant Helms and Chief

Edwards point out that Mr. Decker alleges they were negligent in failing to (1) terminate

a police pursuit, (2) implement proper vehicular pursuit policies, and (3) properly train

officers in pursuit procedures. Sergeant Helms and Chief Edwards contend these are

nothing more than allegations of mere negligence in the performance of discretionary

functions, which are barred by the official immunity doctrine.

 Mr. Decker argues section 544.157.4 2 renders the duty to supervise vehicular

pursuits a ministerial one. This provision states: “A public agency electing to institute

vehicular pursuits shall adopt a policy for the safe conduct of vehicular pursuits by peace

officers. Such policy shall meet the following minimum standards: (1) There shall be

supervisory control of the pursuit[.]” § 544.157.4. Mr. Decker also argues his petition

alleges the absence of control of the pursuit, the absence of training in any capacity, and

the absence of required policies. Though he concedes Sergeant Helms and Chief

Edwards may have had discretion in determining some aspects of these requirements,

Mr. Decker argues Sergeant Helms and Chief Edwards had no discretion to fail altogether

in their duty to adopt some policy and conduct some training. Mr. Decker contends their

failure even to attempt to comply with section 544.157.4 and Peace Officer Standards and

Training renders them liable notwithstanding official immunity.

2
 All statutory references are to RSMo 2016 unless otherwise noted.
 6
 Mr. Decker’s argument misses the mark in two important respects. First, it should

be noted that section 544.157.4 places the “duty” to adopt vehicle pursuit policies on the

“public agency electing to institute vehicular pursuits.” Neither Sergeant Helms nor

Chief Edwards, alone or combined, is a “public agency” as that term is used in section

544.157.4. Accordingly, nothing before this Court establishes that the duty on which

Mr. Decker relies falls on these two officials. More importantly, even assuming section

544.157.4 imposes some duty on Sergeant Helms and Chief Edwards to adopt a vehicle

pursuit policy, this is not sufficient to render the duty “ministerial” such that official

immunity will not apply. An act is not ministerial simply because it is required by

statute. See Alsup, 588 S.W.3d at 192-93 (finding even when an “act appears to be

authorized or required by statute, official immunity will still apply if the official retains

authority to decide when and how that act is to be done”).

 Section 544.157.4 does not remove all authority to decide when, how, or what

vehicle pursuit policies and procedures to adopt or when and how training under those

policies should be conducted. Having minimum standards does not remove all authority

to make decisions regarding the vehicular pursuit policy or how to properly train officers

to follow the procedures. Additionally, the decision to terminate a police pursuit is a

“highly discretionary supervisory and policy decision[] that the [official immunity]

doctrine is intended to shield.” Southers, 263 S.W.3d at 621.

 Each of the actions Mr. Decker argues are “ministerial” (i.e., adopting a vehicle

pursuit policy, training officers under that policy, and deciding when and how to

terminate a vehicular pursuit) are replete with discretion. Nothing in section 544.157.4

 7
removes this discretion, and the officials charged with the duty that statute imposes retain

wide latitude to determine precisely what vehicle pursuit policy to adopt, when to adopt

it, and when and how best to train peace officers under that policy. These are the types of

decisions the official immunity doctrine is meant to protect. See Alsup, 588 S.W.3d at

191 (explaining “society’s compelling interest in vigorous and effective administration of

public affairs requires that the law protect those individuals who, in the face of imperfect

information and limited resources, must daily exercise their best judgment in conducting

the public’s business”). 3 Sergeant Helms and Chief Edwards may have been negligent in

failing to fulfill these discretionary duties with due regard for the public safety and in

such a way as to protect Ms. Flath – and this Court assumes as much for purposes of this

analysis – but the doctrine of official immunity prohibits the courts of this state from

holding them personally liable for such a failure.

 Conclusion

 For the reasons set forth above, this Court’s preliminary writ of prohibition is

made permanent.

 _____________________________
 Paul C. Wilson, Judge

Draper, C.J., Russell, Powell, Breckenridge
and Fischer, JJ., concur.

3
 Sergeant Helms and Chief Edwards also argued the public duty doctrine bars Mr. Decker’s
claims against each of them. This Court does not address this argument because the official
immunity doctrine issue is dispositive.
 8