

# In the Missouri Court of Appeals
## Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| TONY WOOLFOLK, et al., | ) | No. ED111491 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC03677 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed: April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

## Introduction

This appeal arises after the circuit court entered summary judgment in favor of St. Louis County police officers Alex Maloy and Mark Jakob ("Officers"), finding they were not negligent after pursuing driver Mikel Neil ("Neil") in a high-speed police chase that resulted in the death of Neil and his passenger, Townsal Woolfolk ("Woolfolk"), when the vehicle crashed into a tree. The trial court granted the Officers' motion for summary judgment because the Officers did not owe a duty to the decedents, there was not any evidence of proximate causation and the Officers were protected from civil liability by the public duty doctrine and official immunity.

Woolfolk's family ("Appellants") now claim that the trial court erred in granting summary judgment because (1) the Officers owed a duty to decedent Woolfolk under statutory and common law; (2) the Officers proximately caused decedent's death by conducting an illegal

Precision Immobilization Technique ("PIT") maneuver where the police vehicle struck the decedents' vehicle from behind and by failing to cease the pursuit; and (3) official immunity and the public duty doctrine are inapplicable because the Officers were driving in a non-emergency situation and they acted with bad faith or malice. Appellants also argue that the trial court abused its discretion by granting the County's motions to strike some of the Appellants' responses to the County's statement of facts and additional facts proffered by Appellants.

We affirm because the Officers did not owe a duty to decedent, a passenger in a fleeing vehicle, under either statutory or common law.

**Background**

On the evening of August 10, 2018, Officers Maloy and Jakob saw a silver 2003 Hyundai Elantra, driven by Mikel Neil, run a red light when turning left onto Airport Road in St. Louis County. The Officers were on duty but were traveling outside their specifically assigned patrol area. As the driver of the marked police vehicle, Officer Maloy turned on the emergency lights to initiate a traffic stop, but did not activate the siren. Neil did not stop his vehicle and instead began driving erratically. The Officers commenced pursuit, however they violated St. Louis County police policy because they did not inform dispatch of their decision. They followed as Neil violated traffic signals, weaved in and out of traffic and drove at speeds up to 90 miles per hour ("mph") which exceeded the 35-mph speed limit posted on Airport Road.

As the vehicle neared Tyndall Drive, Neil swerved into oncoming traffic, forcing other drivers to swerve out of his path and before crashing into a tree. The parties dispute whether Officer Maloy purposefully hit Neil's Elantra from behind in what is commonly referred to as a PIT maneuver, an action that preceded the crash. The entire pursuit lasted approximately forty seconds. After the crash, Officer Maloy turned off the emergency lights and continued to drive

past the Elantra, through the debris field, without rendering aid. Woolfolk and Neil died at the scene. Autopsies revealed that at the time of the accident Woolfolk and the driver were intoxicated, testing positive for fentanyl and cocaine.

Woolfolk's family brought a wrongful death action in the circuit court against Officers Jakob and Maloy individually, and against their employer, St. Louis County, under a theory of *respondeat superior*. Their petition alleged that the defendants violated their duty to operate the police cruiser or the emergency vehicle with the highest degree of care and their negligent conduct during the pursuit caused Woolfolk's death. The Officers and the County both moved for summary judgment on the basis that the Officers did not owe a duty to the decedent, and that plaintiffs cannot prove that the alleged negligence was the proximate cause of decedent's injuries. The Officers further argued that their actions were protected by official immunity and the public duty doctrine. The circuit court granted summary judgment in favor of the defendants. This appeal follows.

**Standard of Review**

Our review of summary judgment is *de novo*. *Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008)). We apply "the same criteria as the trial court in determining whether summary judgment was proper." *Bowden v. Am. Modern Home Ins. Co.*, 658 S.W.3d 86, 91 (Mo. App. S.D. 2022). Thus, we do not defer to the trial court's order granting summary judgment. *Barry Harbor Homes Ass'n v. Ortega*, 105 S.W.3d 903, 906 (Mo. App. W.D. 2003). Rather, "[s]ummary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Cowin v. Shelter Mutual Ins. Co.*, 460 S.W.3d 76, 77 (Mo. App. W.D. 2015). A defendant is entitled to summary judgment when she

3

"shows facts that negate any one of the necessary elements of the plaintiff's claim." *Blackwell Motors, Inc. v. Manheim Servs. Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017). We review the record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Walsh v. State Farm Mutual Auto Ins. Co.*, 662 S.W.3d 105, 110 (Mo. App. W.D. 2023) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020)).

## Discussion

In their first point on appeal Appellants assert that the Officers owed a statutory and common law duty of care to decedent. We disagree and find Point I dispositive. This case presents an issue of first impression for Missouri courts, whether police officers owe a duty of care to voluntary passengers in a fleeing vehicle. "The issue of whether a defendant had a duty of care to protect a decedent from injury under the circumstances of a given case is 'purely a question of law' to be decided by a court." *Scales v. Whitaker*, 615 S.W.3d 425, 431 (Mo. App. E.D. 2020) (internal quotation omitted).

In order to prevail in an action for negligence under these circumstances, a plaintiff must show: (1) the defendant owed a duty of care to the plaintiff's decedent; (2) the defendant breached that duty and (3) the defendant's breach proximately caused decedent's injury. *Wieland v. Owner-Operator Services, Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018). Therefore, whether Appellants can overcome summary judgment hinges on their ability to first establish that the Officers owed decedent, a passenger in a fleeing vehicle, a duty of care. For the reasons discussed below, we hold that such a duty does not exist.

*I. Statutory Duty*

Initially, Appellants argue that law enforcement officers engaged in vehicular pursuit owe a duty of care to passengers in a fleeing vehicle pursuant to section 300.100,[1] which states that drivers of authorized emergency vehicles have "the duty to drive with due regard for the safety of all persons." Appellants urge that we cannot read "all persons" to exclude passengers in a fleeing vehicle without eviscerating the plain language of the statute. We disagree and hold that to interpret section 300.100 as creating a duty to voluntary passengers in a fleeing vehicle would lead to an unreasonable result. More specifically, it would require law enforcement to identify the presence of a passenger and the passenger's relationship to the fleeing driver before deciding to initiate or terminate a pursuit. The time, energy and resources required to analyze a highly volatile, evolving and precarious situation cannot be justified when weighed against the significant public interests served by swift and responsive police action. We find support for our holding in the decisions of sister states interpreting similar statutory language and finding that it does not create a duty of care to the voluntary passengers of fleeing motorists.

"Determinations regarding issues of statutory interpretation are questions of law subject to *de novo* review." *Fox v. State*, 640 S.W.3d 744, 757 (Mo. banc 2022) (citing *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021)). "When interpreting statutes, [we] must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 110 (Mo. banc 2023) (quoting *Cosby v. Treasurer of Mo.*, 579 S.W.3d 202, 206 (Mo. banc 2019)). However, "[s]tatutes cannot be interpreted in ways that yield unreasonable or absurd results, and it is assumed that the legislature's enactment of a statute is meant to serve the best interests and welfare of the general public." *State v. Nash*, 339 S.W.3d 500, 508 (Mo. banc 2011).

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise indicated.

"In interpreting a uniform act, decisions from other states may provide guidance." *Schutter v. Seibold*, 632 S.W.3d 820, 829 (Mo. App. W.D. 2021) (citing *Curtis v. James*, 459 S.W.3d 471, 475 (Mo. App. E.D. 2015)). Considering this is a case of first impression, "it is instructive to examine cases from other jurisdictions in addressing these issues." *Schembre v. Mid-Am. Transplant Ass'n*, 135 S.W.3d 527, 531 (Mo. App. E.D. 2004). "While we are not bound to follow the decisions of a sister state, they are persuasive, if based on sound principles and good reason." *Missouri Tp., Chariton Cnty. v. Farmers' Bank of Forest Green*, 328 Mo. 868, 876 (Mo. 1931). We may look to "the judicial decisions of sister states for assistance in discovering expressions of public policy." *Eyerman v. Mercantile Trust Co., N.A.*, 524 S.W.2d 210, 217 (Mo. App. 1975).

Section 300.100.4 mirrors the language of section 11-106(d) of the Uniform Vehicle Code, a model law published by the National Committee on Uniform Traffic Laws and Ordinances. This section of the Uniform Vehicle Code has been adopted in some iteration by a majority of states.[2] While we have not yet considered whether "the duty to drive with due regard for the safety of all persons" includes a duty to passengers in a vehicle pursued by police, courts in a number of our sister states have answered this very question and found that it does not.

---

[2] *See* Ala. Code § 32-5A-7 (Alabama); 13 Ala. Admin. Code 02.140 (Alaska); Ariz. Rev. Stat. § 28-624 (Arizona); Ark. Code § 27-51-901 (Arkansas); Colo. Rev. Stat. § 42-4-108 (Colorado); Conn. Gen. Stat. § 14-283 (Connecticut); 18 DC Muni. Regs. § 2002 (D.C.); Fla. Stat. § 316-072 (Florida); Ga. Code Ann. § 40-6-6 (Georgia); Haw. Rev. Stat. § 291C-26 (Hawaii); Idaho Code Ann. § 49-623 (Idaho); 625 Ill. Comp. Stat. § 5/11-907 (Illinois); Ind. Code § 9-21-1-8 (Indiana); Iowa Code § 321.231 (Iowa); Kan. Stat. Ann. § 8-1506 (Kansas); Ky. Rev. Stat. Ann. § 189.940 (Kentucky); La. Stat. Ann. § 32:24 (Louisiana); Me. Stat. tit. 29-A, § 2054 (Maine); Md. Code, Transportation § 21-106 (Maryland); Mich. Comp. Laws § 257.653 (Michigan); Miss. Code Ann. § 63-3-809 (Mississippi); Mont. Code Ann. § 61-8-107 (Montana); Neb. Rev. Stat. § 60-6,114 (Nebraska); Nev. Rev. Stat. § 484B.700 (Nevada); N.H. Rev. Stat. Ann. § 265:8 (New Hampshire); N.J. Rev. Stat. § 39:4-91 (New Jersey); N.M. Stat. § 66-7-6 (New Mexico); N.Y. Veh. & Traf. Law § 1104 (New York); N.D. Cent. Code § 39-10-33.2 (North Dakota); Ohio Rev. Code § 4511.041 (Ohio); Okla. Stat. tit. 47, § 11-106 (Oklahoma); Or. Rev. Stat. § 814.050 (Oregon); 75 Pa. Cons. Stat. § 3105 (Pennsylvania); 31 R.I. Gen. Laws § 31-12-9 (Rhode Island); S.C. Code Ann. § 56-5-760 (South Carolina); S.D. Codified Laws § 32-31-5 (South Dakota); Tenn. Code Ann. § 55-8-108 (Tennessee); Tex. Transp. Code § 546.005 (Texas); Vt. Stat. Ann. tit. 23, § 1015 (Vermont); Va. Code Ann. § 46.2-829 (Virginia); Wash. Rev. Code § 46.61.035 (Washington); W. Va. Code § 17C-2-5 (West Virginia); Wis. Stat. § 346.03 (Wisconsin); Wyo. Stat. Ann. § 31-5-106 (Wyoming).

In *Sellers v. Township of Abington*, the plaintiffs' son died after being ejected from a vehicle driven by his friend who was fleeing from police because he feared being arrested and charged with Driving While Intoxicated. 106 A.3d 679, 680–81 (Pa. 2014). The plaintiffs asserted that the pursuing officers caused their son's death by negligently initiating and failing to terminate the high-speed pursuit. *Id.* The trial court granted summary judgment against the plaintiffs on the basis that negligence could not attach because the officer did not owe the decedent a duty. *Id.* at 683. On appeal, the plaintiffs argued that Pennsylvania's emergency vehicle statute establishes an actionable statutory duty to passengers in a fleeing vehicle. *Id.* at 688. Similar to section 300.100.4, the Pennsylvania statutory language states that "the driver of an emergency vehicle" has "the duty to drive with due regard for the safety of all persons." *Id.* at 688. Ultimately, the Supreme Court of Pennsylvania disagreed with plaintiffs, holding that the statute "does not create a statutory duty to unknown passengers in a fleeing vehicle" but rather "recognizes that emergency vehicle drivers still owe a common law duty to the public at large, i.e., innocent bystanders." *Id.* The court further pointed out that "[i]mposing a duty on officers to unknown passengers in a fleeing vehicle would present an unworkable burden on officers, essentially halting police pursuits." *Id.* at 689.

In *Robinson v. City of Detroit*, the Supreme Court of Michigan considered two cases where the plaintiffs' decedents were passengers in vehicles fleeing from Detroit police and died after the pursuits ended in fatal accidents. 613 N.W.2d 307, 312–13 (Mich. 2000). Again, the plaintiffs alleged the pursuing officers acted negligently. *Id.* On appeal, the court was tasked with determining "whether the city of Detroit or individual police officers face civil liability for injuries sustained by passengers in vehicles fleeing from the police." *Id.* at 311. Like Missouri, Michigan's emergency vehicle statute provides that "the driver of an authorized emergency

vehicle" has "the duty to drive with due regard for the safety of all persons." *Id.* at 314. The *Robinson* court held that "the police owe a duty to innocent passengers, but owe no duty to passengers who are themselves wrongdoers." *Id.* at 311. The latter circumstance is most applicable to our matter because the presence of the same illicit substances in the blood of both the driver and the passenger suggests that not only was Woolfolk a voluntary passenger, but he was also engaged in common criminal activity with the fleeing motorist.

In *Fisher v. Miami-Dade County*, plaintiff's decedent was a passenger in a car driven by his friend, who was fleeing from police while driving under the influence of alcohol. 883 So.2d 335, 335–36 (Fla. 3d DCA 2004). The driver crashed into a concrete pole and died instantly while plaintiff's decedent later died at the hospital. *Id.* The plaintiff filed a negligence action against the county, alleging that the pursuit was conducted contrary to sound police procedures and county policy. *Id.* The Florida District Court of Appeals determined that police officers do not owe a duty to a passenger being pursued by police. *Id.* The court explained that "requiring police officers to first determine if there was a passenger and then [to] determin[e] if the passenger was involved in a crime would essentially halt any police pursuit" and place an overwhelming burden on police to perform an impractical, if not impossible, task. *Id.* at 337.

In *Fawcett v. Adreon*, the plaintiff sued for negligence after his daughter, a passenger in a vehicle chased by city police, died when the fleeing vehicle crashed into a construction zone. 2001 WL 950159 at *1 (Tenn. Ct. App. 2001). The plaintiff argued that the Tennessee emergency vehicle statute "imposes a duty on law enforcement personnel to drive with due regard for the safety of all third parties" and the city owed a duty of care to his daughter as a third party or passenger in the fleeing car. *Id.* at *2. The court found that "police officers have a duty to apprehend law violators and the decision to commence or continue [the] pursuit of a fleeing

8

suspect is, by necessity, made rapidly . . . with little or no information about the driver or the passenger." *Id.* at *4 (citation omitted).

To find otherwise, "law enforcement personnel would be constrained against chasing any fleeing vehicle with a passenger, unless the law enforcement officer had affirmative information indicating that the passenger had violated a law" and "[s]uch a requirement unreasonably hamstrings law enforcement personnel in the performance of their overall obligation to protect the public," the court concluded. *Id.* Therefore, the court held that "in the absence of information to the contrary, a police officer can reasonably assume that the passenger in the fleeing vehicle is engaged in a common criminal activity with the driver and would therefore be a suspected violator of the law" effectively eliminating any existing duty. *Id.*

Considering that many of these cases involve courts applying a similarly worded statute to similar factual circumstances, we find these decisions to be instructive, persuasive and offer keen insight when guiding our adjudication. Specifically, we agree with our sister states that extending a duty of care from pursuing law enforcement to voluntary passengers in a fleeing vehicle would lead to an unmanageable burden on law enforcement to first determine the existence and criminal culpability of a passenger before initiating pursuit of a fleeing motorist. Imposing such a burden would unreasonably hinder the efficient performance of law enforcement to the detriment of public safety. We cannot assume that the legislature intended such an illogical result. *Nash*, 339 S.W.3d at 508. We therefore hold that section 300.100 does not create a statutory duty to voluntary passengers in a vehicle fleeing from police.

### II. Common Law Duty

Next, Appellants argue that law enforcement officers owe a duty of care to a passenger in a fleeing vehicle at common law. Appellants rely principally on *Nelson v. City of Chester,*

9

*Illinois*, where the family of a fleeing motorist filed a negligence claim against the city for "failing to properly train their police officers" after the driver died following a police pursuit. 733 S.W.2d 28, 30 (Mo. App. E.D. 1987). However, the *Nelson* court (1) did not directly address claims of negligence against the individual officers, and (2) affirmed the trial court's decision to dismiss those claims based on official immunity. *Id.* at 29–30. Thus, we find that *Nelson* offers little precedential value to this opinion.

Regardless of *Nelson's* applicability, we still acknowledge the significance of public policy considerations as argued by Appellants. "The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; [and] the economic burden upon the actor and the community." *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 432 (Mo. banc 1985). On balance, these factors weigh against the existence of a common law duty to the voluntary passengers of fleeing motorists.

"[F]oreseeability that some injury might result from the act complained of *normally* serves as the paramount factor in determining the existence of a duty." *Id.* at 431 (emphasis added). We agree it is foreseeable that passengers in a fleeing vehicle may be injured in the motorist's attempt to evade apprehension. However, foreseeability does not carry as great a weight under these circumstances as other considerations expressed in case law. Indeed, law enforcement must routinely act by creating possible risk to some in order to protect others from imminent harm. The necessity for police action to thwart the threat to innocent third parties is

reinforced by the factual circumstances in this matter. The evidence reflects that Neil was presenting a positively perilous predicament to the public, as well as endangering Woolfolk, because he was driving erratically and at high rates of speed forcing other motorists to swerve in order to avoid collision. We believe the existing duty is sufficient to ensure that police pursuits are not conducted in a negligent manner without also requiring a duty to the passengers in the fleeing vehicle responsible for creating the risk.

Appellants effectively remind us about some of the troubling factual aspects involving this matter, further arguing that these circumstances warrant a different outcome. While we agree that some of the police conduct toward the conclusion and following the pursuit is concerning, approaching contemptible, we balance this with the equally compelling argument that the public relies on law enforcement to respond quickly to suspected or actual criminal activity. This concept is fundamental to enforcing the rule of law and ensuring the safety of a law-abiding society. Swift police action is an interest that serves the public welfare and is worthy of protection.

Here, the fleeing motorist had an absolute duty to yield to the Officers when they approached with emergency lights illuminated. Section 304.022. His decision to flee instead of stop was likely a felony offense because he created "a substantial risk of serious physical injury or death," to others and his passenger, Woolfolk. Section 575.150. The public expects that police will apprehend law violators like the driver in this case. However, exposing officers to civil liability by imposing a duty to potential passengers in fleeing vehicles would discourage pursuits and the apprehension of criminals. Moreover, the public would bear the cost of compensating fleeing passengers for their injuries because, as in this case, the government employers of law enforcement are often sued under a theory of *respondeat superior*. Thus, taxpayers would bear

the burden of government defending lawsuits brought by injured passengers and the potential damages owed to those passengers. We therefore hold that public policy dictates that there is not a common law duty to voluntary passengers in fleeing vehicles.

## Conclusion

Since the Officers did not owe decedent a duty of care under statutory or common law, summary judgment was appropriate as a matter of law. We affirm the decision of the trial court.

_____
Thomas C. Clark II, Presiding Judge

James M. Dowd, J., dissents in separate opinion and John P. Torbitzky, J., concurring in separate opinion.



# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| TONY WOOLFOLK, et al., | ) | No. ED111491 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC03677 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed: April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

### CONCURRING OPINION

I concur with the well-reasoned opinion of Judge Clark. That opinion should be considered the opinion of the Court. I write separately only to highlight that a police officer's duty in effecting the seizure of a criminal suspect is governed by the Constitutions of the United States and Missouri, not general negligence law. To hold otherwise would serve to expand negligence law into an area where it has no proper application.

The tort of negligence developed through the common law to hold individuals responsible for injuries caused when their careless actions caused a greater risk than society was willing to accept. The hallmark of negligence law is the desire to ensure that people act in a manner that does not unnecessarily increase the risk of harm to others. *See* Restatement (Second)

of Torts § 282 ("[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.").

A police pursuit is a poor fit for the use of negligence law. If the officer decides pursuit is appropriate, the officer necessarily increases the risk of harm to the suspect. A prolonged chase, particularly one at high speeds, undoubtedly makes it more likely that the suspect will be injured. Moreover, an officer in a pursuit may find it necessary to use force to terminate the pursuit, not only to take the suspect into custody but also for the protection of other motorists. These are actions that may be entirely reasonable but that cannot be accomplished without increasing the risk of harm.

A holding that the officer owes the suspect a duty of care in negligence suggests that there is a threshold to which an officer intentionally can increase the risk of harm to the suspect before the officer's actions becomes negligent. But acknowledging that an officer may intentionally increase the risk of harm is anathema to the concept of negligence, which urges society to use ordinary care to avoid doing just that. Very likely, it is for this reason that no reported cases from this State, and very few from any others, have found that officers owe a duty of care in negligence to fleeing suspects.

That does not mean, however, that officers are free to stop a fleeing suspect in any manner they wish. Rather, the Fourth Amendment to the U.S. Constitution sets the parameters by which an officer may act when taking suspects into custody. Specifically, the Fourth Amendment requires that all seizures be reasonable. In *Scott v. Harris*, 550 U.S. 372, 381 (2007), our Supreme Court unquestionably recognized that, when an officer stops a fleeing suspect through force, the officer has seized the suspect. That seizure must be effectuated reasonably. *Id. Scott* also made clear that when a fleeing suspect is causing danger to others on the road, it is

2

reasonable for the officer to terminate the pursuit with force. *Id*. at 384-85. Questions regarding whether a suspect created danger to other motorists and the reasonableness of the use of an officer's force run on a spectrum. *Id.* at 386 (Ginsburg, J., concurring). What is reasonable force in one chase, may be excessive in another. And it is certainly conceivable that a jury could find that officers who use a prohibited maneuver to run a fleeing suspect off the road and then speed away from the scene in an apparent attempt to avoid responsibility acted with excessive and unreasonable force in effecting the stop. That question, however, is not before this Court to decide.

The only question that is before this Court concerns whether a duty in negligence exists. I see no common law duty, and I see no evidence that the General Assembly intended to create a duty with § 300.100, RSMo 2016.[1] That section is not written in terms of "creating" a duty. It is written in terms of retaining a duty then in existence. Section 300.100.4 states that the provisions allowing drivers of authorized emergency vehicles to violate certain traffic laws "shall not relieve the driver … from the duty to drive with due regard for the safety of all persons[.]" This language does not indicate legislative intent to create a duty owed by police officers to fleeing motorists simply by its use of the phrase "all persons." Instead, it reserves any already existing duty.  I find further support for this position in § 300.105, which states that Missouri motorists must yield the right of way to approaching emergency vehicles when those vehicles are displaying their lights and sounding their siren. That section also includes language that is nearly identical to language in § 300.100.4. If the legislature intended to create a duty owed by police officers to fleeing suspects, it seems highly unlikely that it would do so with identical language in two separate sections. What seems much more likely, is that the legislature did not intend to do

---

[1] All further statutory references are to RSMo 2016.

3

anything other than to ensure that the common law duties of emergency vehicle drivers remained intact. Those common law duties did not include a duty in negligence to fleeing suspects.

To be clear, officers unquestionably owe a duty to innocent bystanders, just as do firefighters and ambulance drivers. That duty is subject to the doctrines of official immunity and the public duty doctrine, as the dissent lays out quite well. But when an officer begins to effectuate a seizure, the officer's duties to the individual or individuals being seized are governed by constitutional principles, principles that are much better suited to ensuring justice for anyone injured by an officer's excessive use of force.

John P. Torbitzky, Judge



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| TONY WOOLFOLK, et al., | ) | No. ED111491 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | No. 18SL-CC03677 |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | Honorable Bruce F. Hilton |
| | ) | |
| Respondents. | ) | Filed: April 9, 2024 |

Thomas C. Clark II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

## DISSENT

I respectfully dissent for largely the same reasons set forth in my dissent in the related case of *Neil v. St. Louis County, et al.*, No. ED111474, __ S.W.3d __ (Mo. App. E.D. April 2, 2024) which arose out of the same August 10, 2018 incident, and in which I argued that based on section 300.100.4's language that the driver of an emergency vehicle such as a police officer pursuing a fleeing suspect has "the duty to drive with due regard for the safety of all persons" includes fleeing suspects like Neil, the decedent driver in this incident. And since this appeal concerns Woolfolk, the decedent *passenger*, the case for recognizing the existence of a duty is even more compelling. Moreover, the majority opinion's laudable goal of protecting police officers from personal liability when performing their official duties for the public is already baked into the entrenched doctrines of official immunity and public duty.

Thus, I would reverse summary judgment on the duty question as an unnecessary change in Missouri law and because the legislature has already spoken plainly on the issue. In section 300.100.4[1], the legislature has stated that authorized emergency vehicles have "the duty to drive with due regard for the safety of *all* persons" which, in plain English and in faithful adherence to the legislature's word choice, includes the passengers of fleeing suspects. And as far as the other three bases for the trial court's grant of summary judgment – causation, official immunity, and public duty doctrine, which the majority did not reach – I would again apply the full breadth of Missouri law and reverse on those issues as well.

Furthermore, I would find that causation here is a disputed factual matter for the trier of fact given the competent evidence in the form of witness testimony that the officers' vehicle purposefully made contact with the Neil vehicle shortly before it lost control and struck a tree killing its occupants. As for the official immunity and public duty doctrines, I would also reverse under the particularly troubling facts of this case which in my opinion satisfy at this summary judgment stage the exceptions to those doctrines when the officer's conduct is done willfully wrong, in bad faith, with malice, or with corruption. Simply put, a jury should decide whether the officers' conduct during the chase, including: (1) their deployment of an unauthorized "PIT maneuver"[2] that caused the fleeing suspect to lose control and crash, (2) fleeing the scene without rendering aid, and then (3) lying to their superiors to cover up their involvement,

---

[1] All statutory references are to Revised Statutes of Missouri (2016) unless otherwise stated.
[2] According to the record, a PIT maneuver, or a "precision intervention technique," occurs when an officer lines up his vehicle parallel with the suspect's vehicle and then makes contact with the rear side of the suspect's vehicle to cause it to spin out. Two officers testified in deposition that PIT maneuvers are unauthorized. An eyewitness testified that he saw the front left side of the police vehicle make contact with the rear right side of the Neil vehicle just before it crashed into the tree.

satisfies the foregoing exceptions to official immunity and the public duty doctrine such that these officers should lose the protection provided by those doctrines.

*Duty*

A duty of care may be imposed by statute or ordinance, assumed by contract, or arise pursuant to common law under the circumstances of the case. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). Section 300.100.4 provides that law enforcement vehicles, even when engaged in an emergency such as "when in the pursuit of an actual or suspected violator of the law," retain the "duty to drive with due regard for the safety of all persons."

"The primary objective of statutory interpretation is to ascertain the intent of the legislature and give effect to that intent as it is reflected in the plain language of the statute." *State v. Meyers*, 333 S.W.3d 39, 47 (Mo. App. W.D. 2010). When the statute's language is clear and unambiguous, we give effect to the language as written and do not engage in statutory construction. *Shipman v. DNS Electronic Materials, Inc.*, 267 S.W.3d 751, 758 (Mo. App. E.D. 2008). This Court may look beyond the plain meaning of the statute when it leads to an absurd or illogical result. *Truman Medical Center, Inc. v. Progressive Casualty Insurance Company*, 597 S.W.3d 362, 367 (Mo. App. W.D. 2020).

I disagree with the majority opinion's departure here from these hallowed principles of statutory construction because in my judgment, the plain reading of "all persons," in a statute that mandates that emergency vehicles have a duty to drive with due regard for "all persons," necessarily includes the passengers of fleeing suspects, even if they are unknown to the police officer. Our role is not to change the words or the meaning of the words or add words to what the legislature has chosen. Likewise, except for when a police officer is engaged in an emergency, the general duty of care that applies to all motorists applies to police officers.

Section 304.012.1. And section 300.100 has effectively acknowledged as much by characterizing the "privilege" of an emergency vehicle to violate the traffic laws as an "exemption" from those laws.

Moreover, the circumstance involving a passenger in a fleeing suspect's vehicle illustrates the faulty approach the majority has taken. Are we holding that an officer has no duty under *any* circumstances to an innocent child who was left in a vehicle that was then taken by a fleeing suspect? Or to any passenger who did not willingly participate in the flight over which that passenger had no control? Again, Missouri law holds there is almost never a duty nor liability on the part of the officer by operation of the public duty and official immunity doctrines, respectively. But, no duty with no exceptions is a bridge too far for me.

Finally, the clarity with which the legislature has spoken here likewise undermines any license we might have to declare this patent language an absurdity in order to abandon our duty to abide by the legislature's choice of words and instead reach out to judicial constructs from other jurisdictions.

*Causation*

I would also find that causation is a disputed fact that precludes summary judgment because the competent evidence in this record that the officers made contact with the Neil vehicle causing it to lose control seconds before it collided with a tree distinguishes this case from most of the recent Missouri caselaw addressed below which has rejected causation as a matter of law in police pursuit cases as too speculative.

"The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Harris v. City of St. Louis*, 658 S.W.3d 49, 53 (Mo.

4

App. E.D. 2022). Every case is decided on its own facts and proximate cause cannot be based on speculation or conjecture. *Id.*

Rightly, establishing that pursuing police officers' conduct was a proximate cause of any of the consequences that occur in connection with the pursuit of a fleeing suspect, including when the vehicle has a passenger, should be rare, is rare, and will remain rare under the current caselaw. The cause in most instances is the suspect's decision to flee and then engage in a dangerous and often high-speed flight. *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. banc 1999) (the suspects made the decision to flee from police, sped through stop lights, and ultimately crashed into decedents and therefore the causal link between the officer's alleged negligence in failing to stop chasing the suspects and the collision was speculative).

Similarly, the court of appeals has followed *Stanley*'s guidance and found proximate cause lacking due to the speculative causal link between the officer's pursuit conduct and the result when the fleeing suspect's vehicle, not the officer's, strikes an innocent bystander. *See, e.g., Dilley v. Valentine*, 401 S.W.3d 544, 549 (Mo. App. E.D. 2013) (proximate cause was speculative where the officer had his lights and siren on, the officer's car was not physically involved in the accident, and the car was over one hundred feet behind the fleeing suspect at the time of the accident); *Frazier v. City of Kansas City*, 467 S.W.3d 327, 337 (Mo. App. W.D. 2017) (the court held causation was speculative given that the factual circumstances were similar to *Stanley* and *Dilley* including that there was no contact between the police vehicle and the suspect's vehicle); *Throneberry v. Missouri State Highway Patrol*, 526 S.W.3d 198, 210 (Mo. App. W.D. 2017) (proximate cause was speculative in that there was no physical contact between the officer and the suspect's vehicle, and the officer's lights and sirens were activated); *Harris*,

5

658 S.W.3d at 54-55 (finding again that proximate cause was speculative because the officer not only did not make contact with the suspect's vehicle, but he did not even see the collision).

What distinguishes this case from *Stanley* and its progeny is that here, there is evidence that the officer's vehicle struck the suspect's vehicle and did so seconds before the pursuit-ending fatal collision with the tree. This evidence establishes a much more obvious and compelling causal link. Moreover, none of the foregoing cases includes anything like the facts here where the officers turned off their lights, fled the scene without rendering aid, and then concealed their involvement.

*Official Immunity and Public Duty Doctrine*

"Official immunity … protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019). "The purpose of the doctrine is to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability. This is because, if an officer is to be put in fear of financial loss at every exercise of his official functions … the interest of the public will inevitably suffer …." *Id.* at 190-91. "Therefore, when a public official asserts the affirmative defense of official immunity, she should be afforded with such immunity so long as she was acting within the scope of her authority *and without malice*." *Id.* at 191 (emphasis added).

Furthermore, "[t]he public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008). "[T]he protections of the public duty doctrine are not intended to be limitless, and, just as the doctrine of official immunity will

6

not apply to conduct that is willfully wrong or done with malice and corruption, the public duty doctrine will not apply where defendant public employees act *'in bad faith and malice.'" Id.* at 612 (emphasis added).

Thus, these doctrines provide strong and warranted protection for law enforcement engaged in their difficult, selfless, and important tasks done for the benefit of the public at large so long as they do not stray so far from their duties that their conduct is considered malicious, corrupt, willfully wrong, or in bad faith. *Id.* The question in this case is not whether these officers were entitled to these protections for indeed they were cloaked with these protections when they went on duty that day. Rather, the question is whether their reprehensible conduct should strip them of that cloak.

And just as with regard to the narrow path to prove proximate causation, it is difficult and will remain difficult to fit an officer's conduct during a pursuit of a fleeing suspect and his passenger(s) into the malice, bad faith or willfully wrong exceptions to official immunity and public duty doctrine. Our caselaw is firm – official immunity shields officers from liability for pursuit-related negligence when there were no facts from which a jury could reasonably infer that the officer acted in bad faith or with malice. *See, e.g., McCormack v. Douglas*, 328 S.W.3d 446, 451 (Mo. App. S.D. 2010) (the volunteer firefighter's conduct by violating firefighter policy as he crossed an intersection amounted to no more than negligence and therefore did not loom towards bad faith or malice); *Throneberry*, 526 S.W.3d at 204 (the court found that none of the facts in the summary judgment pleadings permitted an inference that the officer acted with bad faith or malice); *Carlton v. Means*, --- S.W.3d ---, 2024 WL 330735, at *1 (Mo. App. E.D. 2024) (finding no malice existed because even though the officer sped through a stop sign, he attempted to avoid the collision and testified that he did not intend to injure anyone).

But here, there *is* competent evidence from which the trier of fact could reasonably infer that the officers acted with malice. Instead of stopping to render aid, the officers extinguished their emergency lights and fled the scene of a crash they had arguably caused by improperly employing a PIT maneuver at high speed and then sought to conceal their involvement by lying to their supervisors. On a motion for summary judgment, we must give the benefit of all reasonable inferences to the non-moving party. *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020); *see also Degonia v. Webb City R-VII School District*, 479 S.W.3d 166, 167-68 (Mo. App. S.D. 2015) (giving non-movant the benefit of all reasonable inferences on a summary judgment motion means that, if movant requires an inference to establish right to summary judgment, and evidence reasonably supports any inference other than, or in addition to movant's inference, a genuine dispute exists and movant is not entitled to summary judgment; in other words, summary judgment should not be granted unless evidence could not support any reasonable inference for non-movant).

While it is the rare case that warrants submission to the trier of fact whether an officer's conduct was willfully wrong, malicious or done in bad faith so as to strip the officer of his official immunity and public duty doctrine protections, I submit that this is one. And by lopping off duty altogether with no room for exceptions, the majority has bypassed the important function of these doctrines – to protect officers performing their duties for the protection of the public at large *unless* the officers conduct is done in bad faith or with malice. *Southers*, 263 S.W.3d at 612.

_____
James M. Dowd, J.