

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| WILLIE ROARK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD86960 |
| | ) | |
| KC PET PROJECT, | ) | Filed: December 17, 2024 |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Jackson County
### The Honorable J. Dale Youngs, Judge

### Before Division Two: Alok Ahuja, P.J., and
### Edward R. Ardini, Jr. and W. Douglas Thomson, JJ.

Since 2020, KC Pet Project has had a contract with the City of Kansas City, under which it performs all animal control enforcement activities in the City. Willie Roark was bitten and seriously injured by a pit bull in Kansas City in June 2021. Roark sued the Pet Project for negligence in the Circuit Court of Jackson County. Roark contended that the Pet Project should have taken more aggressive enforcement action against the dog which bit him, in response to an earlier complaint about the dog's dangerous behavior. Following a four-day jury trial, the circuit court entered judgment awarding Roark $200,000 in compensatory damages. The Pet Project appeals. Because the Pet Project failed to preserve any of its claims of error for appellate review, we affirm the circuit court's judgment.

## Factual Background

KC Pet Project is a tax-exempt nonprofit corporation. The Pet Project has operated Kansas City's animal shelter since 2011. In September 2020, Kansas City entered into a contract with the Pet Project under which it would perform all animal control services in the City. The Pet Project was charged with "[h]umanely and effectively enforc[ing] all applicable animal control laws," including "Chapter 14 of the City's Code of Ordinances as amended." Chapter 14

> regulates the possession of all animals and fowl in this city and seeks to balance the consequences of the exercise of such privilege of possession with the right of all citizens to enjoy a normal urban environment free of reasonable fear o[f] dogs or other animals possessed within this city.

KANSAS CITY, MO., CODE OF ORDINANCES § 14-31(a) (2021). Pursuant to the contract, the Pet Project took title to all of Kansas City's animal control vehicles and equipment.

In February 2021, Owner[1] moved into the Rock Ridge Ranch Apartments in Kansas City with her dog, a pit bull. In late March 2021, the Pet Project received multiple calls and messages from one of Owner's neighbors, complaining about the dog's aggressive behavior. An Animal Safety Officer with the Pet Project interviewed Neighbor about the dog's behavior on the date of Neighbor's first call. Neighbor stated that the dog had aggressively charged two individuals at the apartment complex after breaking free of her leash, and that Neighbor had seen Dog outside off-leash on two other occasions. Officer gave Neighbor a form to make a formal complaint about the dog's behavior.

---

[1] Pursuant to § 509.520.1(5), RSMo, we do not provide the names of any non-party witnesses in this opinion.

After interviewing Neighbor, Officer spoke with Owner's daughter at Owner's apartment. Daughter stated that Neighbor's complaints were false, and that Neighbor was a racist who had been bothering her and her mother. Officer told Daughter that Daughter and Owner should document and record video of all future interactions with Neighbor.

Neighbor subsequently submitted a formal complaint describing how the dog had lunged at him and toward another resident of the apartment complex, and had been seen off-leash two other times. Neighbor's written complaint characterized the dog as "a vicious animal," and closed by stating that "[i]t is only a matter of time till [the dog] bites someone, or another dog."

Officer closed the Pet Project's investigation on May 15, 2021, without recommending further investigative action. Officer did not investigate further because the dog was leashed, or behind a physical barrier, during the dog's interactions with Neighbor.

Roark also lived in the Rock Ridge Ranch Apartments. In June of 2021, Roark was walking to get his mail and saw Owner walking the dog on a leash. The dog suddenly pulled away from Owner and bit Roark on the chest, right arm, and left hand. The chest and right arm bites each caused deep puncture wounds. The bite to Roark's left hand severed a finger.

After Roark was bitten, Pet Project personnel secured the dog and transported it to the Pet Project's temporary holding facilities. The dog was later returned to the custody of Owner; subsequently bit another person; and was then euthanized as required by Kansas City ordinances.

Roark filed his petition for damages in July 2021, and an amended petition in May 2022. Owner was originally named as a defendant, but was dismissed without prejudice as she could not be found to be served with process. The amended petition also named the apartment complex's owner, and the complex's property manager, as defendants. The circuit court granted summary judgment to both the property's owner, and property manager, on the basis that they could not be held liable for injuries caused to one apartment tenant by a domesticated animal owned by another tenant. Roark's claims against Owner, the apartment complex's owner, and the property management firm are not at issue in this appeal.

Roark's amended petition asserted two claims against the Pet Project. In Count VI, Roark asserted a negligence claim, alleging that the Pet Project breached its duty "to exercise due care to protect persons, including but not limited to Kansas City residents, such as plaintiff, from harm by defendant [Owner]'s dog." In Count VII, Roark alleged that the Pet Project was liable on a negligence *per se* theory, based on Owner's violation of multiple Kansas City animal control ordinances.

On December 2, 2022, the Pet Project moved for summary judgment. The Pet Project argued that it was entitled to sovereign immunity as a "quasi-governmental agency" which had "contractually undertake[n] . . . governmental functions for the City of Kansas City." The Pet Project also argued that it was entitled to judgment because it did not own, possess, or exercise control over Owner's dog at the time it attacked Roark, and therefore could not be held liable for injuries caused by the dog. Finally, the Pet Project argued that Roark could

4

not assert a negligence *per se* claim against it under Kansas City's animal control ordinances, because those ordinances were "not designed for [the Pet Project], but rather for the owners, possessors and harborers of dogs, and other animals, to abide by."

The circuit court granted the Pet Project's motion for summary judgment as to Roark's claim for negligence *per se*, but otherwise denied the motion. The court acknowledged that *the City* would be entitled to sovereign immunity from Roark's negligence claim, since animal control services constitute the exercise of a "governmental function." The court concluded, however, that the City's sovereign immunity should not extend to a private contractor like the Pet Project, because the Pet Project "retain[ed] significant discretion" concerning the manner in which it performed animal control services. Having rejected the Pet Project's sovereign immunity argument, the court concluded that genuine issues of material fact prevented the grant of summary judgment to the Pet Project on Roark's negligence claim. The court concluded however, that "the only party who can be held liable for negligence *per se* for allegedly violating the [City's animal-control] ordinances" was Owner, and that the Pet Project could not be held liable on a negligence *per se* theory for "[a]llegedly failing to *enforce* those ordinances."

Roark's negligence claim against the Pet Project was tried to a jury on December 4-7, 2023. The jury awarded Roark $200,000 in compensatory damages. The circuit court entered judgment for that amount, along with an award of post-judgment interest. Following the denial of its post-judgment motions, the Pet Project filed this appeal.

5

## Discussion

## I.

In its first Point, the Pet Project argues that the circuit court erred in entering judgment in Roark's favor, because Roark's negligence claim relied on a duty that the Pet Project owed to the general public, to keep the public safe from dangerous animals. The Pet Project contends that the "public duty" doctrine prevents Roark from asserting a claim based on that generalized duty. In Point II, the Pet Project argues that Roark could not assert a claim against the Pet Project based on duties which the Pet Project owed to the City of Kansas City under their contract. The Pet Project asserts that Roark cannot rely on a breach of the Pet Project's contractual obligations to support his negligence claim because Roark was not a party to the contract, and therefore was not in contractual privity with the Pet Project. The Pet Project further contends that no exception to the privity rule applies here.

The Missouri Supreme Court described the public duty doctrine in *Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. 2008):

> The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public.
>
> The public duty doctrine does not insulate a public employee from all liability, as he could still be found liable for breach of ministerial duties in which an injured party had a special, direct, and distinctive interest. This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty. . . . Further, the protections of the public duty doctrine are not intended to be limitless, and, just as the doctrine of official immunity will not apply to conduct that is

6

willfully wrong or done with malice or corruption, the public duty doctrine will not apply where defendant public employees act in bad faith or with malice.

*Id.* at 611-12 (cleaned up).

The privity doctrine generally provides that a plaintiff may not assert a negligence claim against a defendant based on a duty of care derived from the defendant's contractual obligations to a third party. As the Supreme Court recently explained, "the rule of privity . . . generally provides a party to a contract owes no duty to a plaintiff who was not a party to the contract where there was no privity or direct transaction between them." *State ex rel. Tyler Technologies, Inc. v. Chamberlain*, 679 S.W.3d 474, 478 (Mo. 2023) (cleaned up).

We do not address either of the Pet Project's first two Points, because the Pet Project failed to raise its public duty or privity arguments in the circuit court.

It is a bedrock principle of appellate practice that a reviewing court "'generally will not convict a lower court of error on an issue that was not put before it to decide.'" *Prosecuting Att'y, 21st Jud. Cir. v. State*, 696 S.W.3d 853, 866 (Mo. 2024) (quoting *Star v. Burgess*, 160 S.W.3d 376, 378 n.2 (Mo. 2005); additional citation omitted); *accord*, *Holmes v. Union Pac. R.R. Co.*, 617 S.W.3d 853, 858-59 (Mo. 2021). "The circuit court cannot have erred in denying a claim that was never presented to it." *Int. of E.G.*, 683 S.W.3d 261, 266 (Mo. 2024).

The Pet Project's first two Points argue that it was entitled to judgment on Roark's negligence claim as a matter of law; in other words, that Roark's negligence claim should not have been submitted to the jury. Because its public duty and privity arguments challenge the submissibility of Roark's negligence claim, the Pet Project was required to raise those arguments in a motion for directed verdict at the close of all of the evidence; then, following the entry of

7

judgment, the Pet Project was required to renew its arguments in a motion for judgment notwithstanding the verdict ("JNOV"). Rule 72.01(b) provides:

> A party may move for a directed verdict at the close of all the evidence. Whenever such motion is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than thirty days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict . . . .

The Missouri Supreme Court has made clear that, "in a civil, jury-tried case, it is necessary, to preserve the question of submissibility for appellate review, to file a motion for directed verdict at the close of all evidence and to assign the error of the court in having failed to have directed such a verdict in an after-trial motion such as a motion for JNOV." *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 395 (Mo. 2018) (cleaned up).

Because a post-judgment motion for judgment notwithstanding the verdict is merely a renewal of a motion for directed verdict at the close of the evidence, the JNOV motion is limited to the issues raised during trial in a directed verdict motion.

> Because a judgment notwithstanding the verdict is a motion to have judgment entered in accordance with a motion for directed verdict, a sufficient motion for a directed verdict is required to preserve the motion for judgment notwithstanding the verdict and for appeal. Rule 72.01(a) requires that a motion for directed verdict "state the specific grounds therefor." A party cannot save an insufficient motion for directed verdict by making specific allegations in the motion for JNOV. Issues not raised in a motion for directed verdict, but raised in the motion for JNOV, are not preserved for appellate review of the motion for JNOV.

*Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 612 (Mo. App. W.D. 2018) (quoting *Wolf v. Midwest Nephrology Consultants, P.C.*, 487 S.W.3d 78, 83 (Mo. App. W.D. 2016)).

In this case, the Pet Project did not argue that it was entitled to judgment based on the public duty doctrine, or based on a lack of contractual privity, *either* in its directed verdict motion at the close of the evidence, or in its post-judgment JNOV motion. Indeed, as far as we can tell, the Pet Project did not raise the public duty or privity issues in the circuit court *at any time*. The Pet Project's failure to raise these issues in the circuit court denied the court the opportunity to address them in the first instance; it also denied Roark the opportunity to fully develop the facts which might be relevant to the potential applicability of the public duty or privity doctrines in this case.

In its motion for directed verdict at the close of all of the evidence, the Pet Project argued that it was entitled to sovereign immunity; that the Pet Project could not be liable because it did not "own, possess, control, harbor, [or] house this dog on its property"; that Roark "had failed to prove by preponderance of the evidence that [the Pet Project] had a duty to do anything other than what we have done in this case and that they have failed to establish that we have breached that duty"; and that Roark had failed to prove that the Pet Project's actions proximately caused his injuries. The Pet Project also argued that the duty which Roark sought to impose upon it was unachievable, and unrealistic:

> It cannot be said that Kansas City Pet Project has an absolute duty to forecast crime, forecast that Mr. Roark would have been injured, in order to confirm that dogs within the City are securely confined. That is an inordinate duty not conveyed upon Kansas City

9

Pet Project by the ordinance or the contract or any measure of ordinary care.

The Pet Project's motion for judgment notwithstanding the verdict made similar arguments: that the Pet Project was immune from liability based on sovereign immunity; that it had no duty to Roark because it did not own or possess the dog; that Roark's claim imposed an unreasonably stringent standard of care on the Pet Project; that Roark's injuries were not the foreseeable consequence of the Pet Project's response to Neighbor's complaints; that the Pet Project had no legal right to take further enforcement actions against the dog given the nature of Neighbor's complaints; and that Owner's actions were the sole cause of Roark's injuries.

Ironically, in his suggestions in opposition to the Pet Project's JNOV motion, it was <u>Roark</u> who cited one of the key cases on which the Pet Project's public duty argument now relies (*Champagne v. Spokane Humane Soc'y*, 737 P.2d 1279 (Wash. App. 1987)).  In response, the Pet Project argued that *Champagne* was distinguishable, although it <u>*also*</u> asserted that, "if the public duty doctrine did apply to public entities in Missouri, [the Pet Project] would be immune to suit because it lacked the requisite privity with Plaintiff."  Even if the Pet Project's conditional statement were treated as an assertion of immunity under the public duty doctrine, that equivocal statement came too late, for two separate reasons.  First, the issue was not raised in the Pet Project's directed verdict motion; as explained above, the Pet Project's JNOV motion could not expand upon the arguments the Pet Project made before the case was submitted to the jury.  Second, the Pet Project's reply suggestions in support of its JNOV motion were filed more than thirty days after the entry of judgment, and could

not assert additional grounds for relief beyond those raised in its JNOV motion itself. "'Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion.'" *Williams v. Mercy Clinic Springfield Communities*, 568 S.W.3d 396, 411 (Mo. 2019) (quoting *State ex rel. Hawley v. Pilot Travel Ctrs., LLC*, 558 S.W.3d 22, 27 (Mo. 2018)).

The Pet Project notes that, at a pretrial hearing, *the circuit court* mentioned the *Champagne* case's discussion of the public duty doctrine. The court did so, however, in response to the Pet Project's argument that it could not be held liable for the dog's actions, because the Pet Project did not own or possess the dog. This pretrial discussion concerned a separate duty issue, not the applicability of the public duty doctrine. In any event, any discussion of the public duty doctrine during pretrial proceedings cannot satisfy the requirement that the issue be raised in timely directed verdict and JNOV motions.

The Pet Project's references to *sovereign immunity* in its directed verdict and JNOV motions were not sufficient to present the public duty issue to the circuit court. In *Southers*, the Missouri Supreme Court emphasized the differences between the sovereign immunity protection afforded to *governmental entities*, and the official immunity and public duty doctrines which protect *government employees* from liability:

> Although sovereign immunity is a tort protection for government entities, not their employees, public employees are covered by two different government immunity doctrines: the official immunity and public duty doctrines. The official immunity and public duty doctrines have similar policies behind their protections and, in many cases, both doctrines can be applied to protect the defendant government employee. Because both doctrines are often

11

applicable to a defendant public employee's conduct, they are often confusingly applied together in cases. These doctrines are addressed separately [in the Court's opinion] to clarify their distinctions and similarities.

263 S.W.3d at 610.

The results reached in *Southers* highlight the distinction between sovereign immunity and the public duty doctrine. Thus, *Southers* held that the *individual police officers* involved in a vehicle pursuit which injured the plaintiff were protected by the public duty doctrine; but the Court <u>also</u> held that the officers' employer (the City of Farmington) might <u>not</u> be immune from liability, if the waivers of sovereign immunity in § 537.600.1, RSMo were applicable. *Id.* at 618-22. The Court explained:

> For public policy reasons, courts have determined that a public employee should not face liability for a breach of a duty owed to the public. This reasoning, however, does not answer the question of whether there should be liability on the part of a government employer based on its employee's breach. . . . [¶] . . . [T]he policy rationales underlying the [public duty] doctrine are personal to public employees – to provide protection to modestly compensated civil servants against multifarious claims and to permit public servants to do their work without distracting concerns about liability.

263 S.W.3d at 613-14 (citations and footnotes omitted).

Given the distinctions between sovereign immunity and the public duty doctrine, the Pet Project's references to sovereign immunity in its motions for directed verdict and judgment notwithstanding the verdict did not preserve a separate public duty argument for appellate review. Moreover, while the Pet Project argued that Roark's negligence theory placed an "inordinate duty" on the Pet Project to protect the public from the future violent behavior of every dog in

the City, these arguments did not invoke the public duty or privity doctrines either. Instead, the Pet Project's "inordinate duty" arguments simply contended that the scope of the duty asserted by Roark was unrealistic and unreasonable, and untethered from concepts of foreseeability. The Pet Project's general objections that Roark's negligence theory imposed an impossible burden upon it did not preserve the specific legal arguments it now makes in Points I and II.

In its briefing, the Pet Project claimed that it could raise the public duty and privity issues for the first time on appeal, because those arguments implicate Roark's standing to sue. As the Pet Project correctly notes, "[s]tanding is a threshold issue and 'a prerequisite to a court's authority to address substantive issues,'" which "must be established prior to adjudication of a case's merits." *Byrne & Jones Enterps., Inc. v. Monroe City R-1 Sch. Dist.*, 493 S.W.3d 847, 851 (Mo. 2016) (citations omitted). Because it implicates the justiciability of the case, standing issues cannot be waived, and "may be asserted for the first time on appeal." *Schaberg v. Schaberg*, 637 S.W.3d 512, 520 (Mo. App. E.D. 2021) (citations omitted).

The Pet Project's public duty and privity arguments do not raise issues concerning Roark's standing to sue, however. In order to establish standing, a plaintiff must have "'a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief.'" *Schweich v. Nixon*, 408 S.W.3d 769, 775 (Mo. 2013) (citation omitted). "A party establishes standing, therefore, by showing that it has 'some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome.'" *Id.* (citations omitted).

> Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote. . . . A legally protectable interest exists only if the plaintiff is affected directly and adversely by the challenged action or if the plaintiff's interest is conferred statutorily.

*St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 622-23 (Mo. 2011) (cleaned up); *see also*, *e.g.*, *LeBeau v. Comm'rs of Franklin Cnty.*, 422 S.W.3d 284, 288 (Mo. 2014) ("Standing, at its most basic level, simply means that the party or parties seeking relief must have some stake in the litigation." (citation omitted)).

The public duty and privity arguments raised in Points I and II do not question whether Roark has a "personal interest directly at issue" that was "affected directly and adversely by the challenged action." Nor could the Pet Project plausibly argue that Roark lacked a personal interest in the conduct underlying his negligence claim: Roark was seriously injured by a dog which he contends the Pet Project had an obligation to restrain. The Pet Project's public duty and privity arguments do not implicate Roark's standing to sue.

Rather than standing, the Pet Project's arguments address whether Roark can establish one of the essential elements of any tort claim: the existence of an enforceable duty owed by the Pet Project to Roark. The Supreme Court's decisions in *Tyler Technologies* and *Southers* make clear that the public duty and privity issues are questions of the *existence of an enforceable duty*, _not_ standing. *See Tyler Techs.*, 679 S.W.3d at 478 (noting that "[t]his alleged duty [on which plaintiffs' negligence claims depended] . . . is foreclosed by the rule of privity, which generally provides a party to a contract owes 'no duty to a plaintiff who was not a party to the contract where there was no privity or direct transaction

14

between them'" (citation omitted)); *Southers*, 263 S.W.3d at 612 ("The applicability of the public duty doctrine negates the duty element required to prove negligence . . . .").

The courts' *disposition* of cases in which the public duty and privity doctrines bar relief also illustrates that these doctrines do not implicate a plaintiff's standing. A dismissal of a case for lack of standing is "not a disposition of the merits of the case. Thus, it is not appropriate to enter summary judgment – an inherently merits-based disposition – when the party seeking relief lacks standing." *Laws v. Allen*, 697 S.W.3d 834, 838 (Mo. App. S.D. 2024) (cleaned up). Similar to the grant of summary judgment, a dismissal for failure to state a claim is also considered a determination of the merits of the plaintiff's claim. *See*, *e.g.*, *Friday v. McClure*, 536 S.W.3d 235, 241 (Mo. App. W.D. 2017). Notably, *Tyler Technologies* and *Southers* held that, where the privity and public duty doctrines barred relief, the plaintiff had failed to state a claim, or the defendant was entitled to summary judgment. *See Tyler Techs.*, 679 S.W.3d at 477 (stating standards of review for motions to dismiss for failure to state a claim); *Southers*, 263 S.W.3d at 618-20, 621 (individual police officers entitled to summary judgment based on official immunity and the public duty doctrine); *see also E.M. by and through McInnis v. Gateway Region Young Men's Christian Ass'n*, 613 S.W.3d 388, 397-98 (Mo. App. E.D. 2020) (where plaintiff's claim was foreclosed by the "public duty" doctrine, plaintiff failed to state a claim for relief); *Hays v. Dep't of Corr.*, 690 S.W.3d 523, 527-29 (Mo. App. E.D. 2024) (holding that sovereign immunity issue was not "jurisdictional," or comparable to a standing argument, and therefore could not be raised for the first time on appeal); *Kemp v.*

*McReynolds*, 621 S.W.3d 644, 654–55 (Mo. App. E.D. 2021) (plaintiff fails to state a claim where defendant is protected from liability by the official immunity doctrine).

The cases holding that the public duty and privity doctrines relate to the merits of a plaintiff's claim, rather than to the plaintiff's standing, are consistent with innumerable Missouri cases which have held that a plaintiff *fails to state a claim* for negligence where the plaintiff fails to invoke a legally actionable duty. *See, e.g.*, *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 800 (Mo. 2016); *Reddick v. Spring Lake Estates Homeowner's Ass'n*, 648 S.W.3d 765, 774–75 (Mo. App. E.D. 2022); *Doe by and through Doe v. Ozark Christian Coll.*, 579 S.W.3d 220 (Mo. App. S.D. 2019); *K.L.S. v. Union Pac. R.R.*, 575 S.W.3d 259 (Mo. App. W.D. 2019). The failure to state a claim is not a jurisdictional issue, *Robertson v. Rosner*, 641 S.W.3d 436, 442 (Mo. App. W.D. 2022), and cannot be raised for the first time on appeal. *Stander v. Szabados*, 407 S.W.3d 73, 81 (Mo. App. W.D. 2013).

The Pet Project cites *Ours v. City of Rolla*, 965 S.W.2d 343 (Mo. App. S.D. 1998), and *Hinton v. City of St. Joseph*, 889 S.W.2d 854 (Mo. App. W.D. 1994), to argue that a standing issue is presented where a plaintiff is legally barred from enforcing a government entity's performance of its public duties. Both cases held that nearby property owners lacked standing to object to a City's plan to sell (or relinquish) park property. The cases both rely on the principle that "[g]enerally, an individual does not have standing to seek redress of a public wrong, or of a breach of public duty, if such individual's interest does not differ from that of the public generally, even though the complainant's loss is greater in degree than that

16

of other members of the public." *Hinton*, 889 S.W.2d at 858, quoted in *Ours*, 965 S.W.2d at 344. *Hinton* and *Ours* address a fundamentally different issue: whether the plaintiffs in those cases had suffered sufficient individual injury to support their standing. As explained above, it cannot seriously be argued that Roark did not suffer sufficient personal injury to support his negligence claim. *Hinton* and *Ours* do not involve the existence-of-a-duty questions which are at issue here.

We are aware that, in *Verni v. Cleveland Chiropractic College*, 212 S.W.3d 150 (Mo. 2007), the Supreme Court stated that "[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Id.* at 153 (citations omitted). The Pet Project's reliance on the privity doctrine is similar to a claim that Roark was not a third-party beneficiary of the contract between the City and the Pet Project. The two issues are fundamentally different, however. Unlike cases in which the third-party beneficiary doctrine is implicated, Roark has not asserted a breach of contract claim in this case, and is not seeking to directly enforce the contract between the Pet Project and the City of Kansas City. Instead, Roark alleges that the Pet Project owes Roark a tort duty (albeit a duty which may have its origin in the contractual relationship between the City and the Pet Project). *Verni* is not directly applicable here.

In addition, as the Court explained in *Thieret Family, LLC v. Delta Plains Services, LLC*, 637 S.W.3d 595 (Mo. App. E.D. 2021) (Broniec, J.),

> this use of the term "standing" [in *Verni*] is distinct from standing as a general concept of justiciability. In the justiciability sense, the standing analysis concerns whether the party seeking relief has "some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." Courts must evaluate whether a party

has standing in the justiciability sense prior to addressing the substantive issues in a case. Although "standing," as that term has been used in the context of contractual interpretation, is similar, a court necessarily addresses the substantive issues before it when it determines whether an individual is a party to the contract. That inquiry must focus on the intention of the parties to the contract and not on whether a party has a general interest in the subject matter. Standing, as that term has been used in the context of contracts (in particular with respect to arbitration and forum selection clauses), is more appropriately considered an issue of enforceability of a contract based on the intention of the parties. For these reasons, we have opted to eliminate the use of the term "standing" in this opinion in an effort to eliminate any confusion.

*Id*. at 603 n.4 (citations omitted). This discussion in *Thieret Family* is also applicable to other cases which state that a plaintiff lacks "standing" when it is a stranger to the relationship which gives rise to an enforceable tort duty. *See*, *e.g.*, *Meyer v. Carson & Coil*, 614 S.W.3d 618, 626-27 (Mo. App. W.D. 2020) (beneficiaries of a will lacked "standing" to assert claim for legal malpractice against the attorney who drafted the will, since they were not in an attorney-client relationship with the defendant-attorney); *Scott v. Flynn*, 946 S.W.2d 248, 253 (Mo. App. E.D. 1997) (heirs lacked "standing" to assert a breach of fiduciary duty claim against a deceased ward's conservator). Whether a particular plaintiff falls within the class of persons to whom a defendant owes enforceable duties is a substantive, merits issue; it is not a threshold question concerning the justiciability of the dispute.

Because the Pet Project failed to raise public duty or privity arguments in its motions for directed verdict and for judgment notwithstanding the verdict, and because those issues are not questions of "standing" which can be raised for the first time on appeal, the public duty and privity issues are not preserved for

18

our review.  Points I and II are denied.  Nothing in this opinion should be read as expressing an opinion on the merits of the Pet Project's public duty and privity arguments.

## II.

In its third and fourth Points, the Pet Project argues that the verdict-directing jury instruction on Roark's negligence claim improperly left it to the jury to decide whether the Pet Project owed Roark an enforceable legal duty, and gave the jury a "roving commission" to determine the scope of that duty.  Once again, we conclude that neither of these issues was preserved for appellate review.

Rule 70.03 requires litigants to make specific, on-the-record objections to jury instructions, in order to preserve claims of instructional error for appellate review:

> Counsel shall make specific objections to instructions considered erroneous.  No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection.  The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

Rule 70.03.  Under Rule 70.03, "'[t]imely objections [to an instruction] are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial.'"  *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. 2011) (quoting *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 371 (Mo. 2004)).

19

The Pet Project asserted _no_ objections to the verdict-directing instruction in the circuit court. The verdict-directing instruction on Roark's negligence claim was drafted by the court. During the instruction conference, the Pet Project's counsel stated that, "[w]e've had an opportunity to consider the Court's recommendation for the verdict director and before I make argument concerning the language contained therein, I have one clarifying question for the Court." The circuit court and the parties then engaged in an extended discussion concerning the scope of permissible closing argument, in light of the language of the verdict director. After the court answered a series of questions from the Pet Project's counsel concerning the closing arguments she would be permitted to make, counsel stated that, "with that clarification, defendant has no objection to this verdict director." The Pet Project raised no objection to the verdict-directing instruction in its new-trial motion, either.

In these circumstances, the Pet Project plainly failed to preserve _any_ objection to the circuit court's verdict-directing instruction. The Pet Project argues that, even if it failed to preserve its instructional error claims, those claims should be reviewed for plain error under Rule 84.13(c). "Plain error review, however, rarely is granted in civil cases." *Mayes v. St. Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. 2014). Additionally, "[p]lain error is not a doctrine available to revive issues already abandoned by selection of trial strategy or by oversight." *In re S.R.J., Jr.*, 250 S.W.3d 402, 405 n.2 (Mo. App. E.D. 2008); *see also Williams v. St. Charles Auto Mart, Inc.*, 690 S.W.3d 495, 502-503 (Mo. App. E.D. 2024) ("The plain error rule is not a refuge for the maladroit or neglectful. Nor is the doctrine available to revive issues already abandoned by

selection of trial strategy or oversight." (cleaned up)); *Clark v. Mo. Lottery Comm'n*, 463 S.W.3d 843, 849 n.11 (Mo. App. W.D. 2015).

In particular, "[w]here a party affirmatively indicates in the trial court that it has no objection to an instruction or other trial court ruling, it may be found to have 'intentionally abandoned' the issue, waiving even plain-error review." *Gray v. Missouri Dep't of Corr.*, 635 S.W.3d 99, 103 (Mo. App. W.D. 2021); *Speed v. Div. of Emp. Sec.*, 457 S.W.3d 890, 895 (Mo. App. W.D. 2015); *Atkinson v. Corson*, 289 S.W.3d 269, 277 n.6 (Mo. App. W.D. 2009). (We note that in *criminal* cases, appellate courts may be more willing to grant plain-error review to an instructional error claim, despite a party's express statement that it has no objection to an instruction. *See Flood ex rel. Oakley v. Holzwarth*, 182 S.W.3d 673, 679 n.8 (Mo. App. S.D. 2005).)

The Pet Project stated to the circuit court that it had reservations concerning the wording of the verdict-directing instruction. After getting clarification from the court as to the issues counsel would be permitted to argue, however, the Pet Project's counsel explicitly stated that, "with that clarification, defendant has no objection to this verdict director." Counsel plainly made a tactical decision not to object to the particular language of the verdict-directing instruction. Indeed, in its opening Brief, the Pet Project itself declares that, after the court clarified the scope of permissible closing argument, the Pet Project's counsel "ma[d]e a quick tactical decision to withdraw formal objection to the verdict director in an effort to formulate a strategy" for closing arguments. The Pet Project is not entitled to plain-error review of instructional-error claims it intentionally chose not to assert in the circuit court.

Points III and Point IV are denied.

## Conclusion

Because the Pet Project failed to preserve any of the claims of error which it now seeks to raise on appeal, the judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.